Alexander McDONALD, Libelant-Appellant,

v.

UNITED STATES of America, Respondent-Appellee,

and

Bethlehem Steel Company, Impleaded Respondent-Appellee.

No. 14086.

United States Court of Appeals Third Circuit.

Argued Feb. 5, 1963.

Decided Aug. 1, 1963.

Seymour Margulies, Jersey City, N. J. (Herbert Winokur, Levy, Lemken & Margulies, Jersey City, N. J., on the brief), for libelant-appellant.

M. E. DeOrchis, New York City (Connell & Corridon, Jersey City, N. J., Haight, Gardner, Poor & Havens, Stephen K. Carr, New York City, on the brief), for respondent-appellee.

John F. Lynch, Jersey City, N. J. (O'Mara, Schumann, Davis & Lynch, James Dorment, Jr., Jersey City, N. J., on the brief), for impleaded respondent-appellee, Bethlehem Steel Co.

Before KALODNER, STALEY and SMITH, Circuit Judges.

WILLIAM F. SMITH, Circuit Judge.

This suit in admiralty for personal injuries was brought against the United States of America under the Public Vessels Act, 46 U.S.C.A. §§ 781–790, and against the American Export Lines under 28 U.S.C.A. § 1333(1). The alleged grounds of liability were breach of warranty of seaworthiness, and negligence. The suit against Export Lines was dismissed before answer filed, on consent of the libelant. The remaining respondent impleaded the Bethlehem Steel Company, the libelant's employer. The present appeal is from a final decree dismissing the libel and the impleading petition.

The libelant, an employee of Bethlehem Steel, was injured on April 1, 1959, while employed as a painter on the S.S. Exochorda. This vessel was formerly owned by Export Lines and had been out of service for approximately one year. It was acquired by the United States on March 16, 1959, under a contract, pursuant to the terms of which Export Lines, as General Agent,[1] was required to have the vessel completely overhauled, put in a state of repair, and deactivated, preparatory to its being placed in the reserve fleet, commonly known as the "moth ball" fleet. This extensive work was to be done in accordance with NSA Order No. 64 (OPR-4 Revised) [2] and specifications prepared by Export Lines. The contract for the work was awarded to Bethlehem Steel.

The vessel was towed to the shipyard of Bethlehem Steel without steam or power, and without a crew. It was delivered at the shipyard on March 16, and on the following day was placed in dry-dock, where it remained until March 20, when it was refloated and moored at pier side, where it remained until shortly after noon on April 1, the date of the accident. The work on the vessel was performed during the period from March 17 until April 1, inclusive, during which time the vessel was in the exclusive

1. 32(a) C.F.R. 317, et seq. (1958 Revision).

2. Ibid.

possession and control of Bethlehem Steel.

While the work was in progress there were several crew members, employed by Export Lines, on board from day to day, but their only responsibility was to inspect the work and to see that it was performed in accordance with the specifications; they exercised no control over the work or the manner of its performance. Export Lines also maintained an hourly security watch to protect the gear and equipment of the vessel against pilferage.

The accident occurred approximately four to five hours before the S.S. Exochorda was to be redelivered to Export Lines. The necessary repairs were near completion and the vessel had been completely deactivated. The trial judge found: " * * * the vessel's stern tube was disconnected and filled with preservative; her tail shaft was secured to prevent the turning of the propeller; her sea chests and all underwater overboard discharge lines were permanently blocked off; one shot of chain was disconnected from both the port and starboard anchor chains; the shaft alley drain well was cleaned out; the ship's gangways were stowed in a lower hold; life boats were removed and stowed in a lower hold; the radar scanner was dismantled, and all storage lockers were permanently sealed off." These findings are amply supported by the evidence.

It was on the basis of the facts hereinabove outlined that the trial judge concluded that the S.S. Exochorda had been deactivated and withdrawn from navigation and that under the circumstances there was no implied warranty of seaworthiness. It is argued on behalf of the libelant that this conclusion was erroneous. The argument is without merit.

### CLAIM BASED ON WARRANTY OF SEAWORTHINESS

We recognize at the outset, as we must, that under the implied warranty of seaworthiness the shipowner is under a duty to maintain the vessel, its gear and appurtenances, reasonably safe and suitable for the purposes intended. This duty, which is absolute and nondelegable, is owed not only to the members of the crew but also to the shore based employees of an independent contractor engaged aboard ship in work customarily performed by seamen. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946); Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953). However, it has been authoritatively settled, if it was ever in doubt, that the implied warranty may not be invoked as a basis of liability where the vessel has been withdrawn from navigation and is undergoing extensive renovation and repairs. West v. United States, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161 (1959); Latus v. United States, 277 F.2d 264 (2d Cir., 1960), cert. den. 364 U.S. 827, 81 S.Ct. 65, 5 L.Ed.2d 55 (1960). It has been held that in these circumstances there is no warranty of seaworthiness. Ibid.

It is argued on behalf of the libelant that the cited cases are distinguishable because of their "converse fact situation[s]." The vessels involved in each of the cited cases had been withdrawn from the "moth ball" fleet and, at the time of the accidents in which the workmen were injured, were undergoing extensive repairs preparatory to their reactivation and return to maritime service. We fail to perceive any validity in this attempted distinction. The rule of the WEST case was applied in Noel v. Isbrandtsen Company, 287 F.2d 783 (4th Cir., 1961), cert. den. 366 U.S. 975, 81 S.Ct. 1944, 6 L.Ed.2d 1264 (1961), a case in which a workman sustained injury while the vessel was undergoing repairs and deactivation, as in the present case. The libelant's argument, and the reasons advanced in support of it, are clearly without merit.

We should emphasize that the decision of the Supreme Court in the WEST case was predicated not only on the fact that the vessel had been withdrawn from maritime service but also on the further

fact that it was "undergoing major repairs and complete renovation" at the time the workman sustained injury. Therein the Court stated, 361 U.S. at page 122, 80 S.Ct. at page 192, 4 L.Ed.2d 161: "This undertaking was not 'ship's work' but a complete overhaul of such nature, magnitude, and importance as to require the vessel to be turned over to a ship repair contractor and docked at its pier for the sole purpose of making her seaworthy. It would be an unfair contradiction to say that the owner held the vessel out as seaworthy in such a case." The rule of the case must be applied where, as here, the vessel has been withdrawn from maritime service and is undergoing extensive overhaul and repair preparatory to its deactivation. Noel v. Isbrandtsen Company, supra.

■■ The shipowner's liability under the warranty of seaworthiness is dependent upon not only the specific task being performed by the workman at the time of injury but also the nature and scope of the work in which he and other shore based employees are engaged. West v. United States, supra; United N. Y. & N. J. Sandy Hook Pilots Assn. v. Halecki, 358 U.S. 613, 79 S.Ct. 517, 3 L.Ed.2d 541 (1959); Desper v. Starved Rock Ferry Co., 342 U.S. 187, 72 S.Ct. 216, 96 L.Ed. 205 (1952); Berryhill v. Pacific Far East Line, 238 F.2d 385 (9th Cir., 1956), cert. den. 354 U.S. 938, 77 S.Ct. 1400, 1 L.Ed.2d 1537; Raidy v. United States, D.C., 153 F.Supp. 777, affd. 252 F.2d 117 (4th Cir., 1958), cert. den. 356 U.S. 973, 78 S.Ct. 1136, 2 L.Ed. 2d 1147 (1958). See also Latus v. United States, supra. The warranty of seaworthiness does not extend to a shore based employee who, at the time of injury, was engaged with others in the general overhaul and renovation of a vessel temporarily withdrawn from maritime service. Such work is customarily performed in a shipyard equipped for the

purpose, and is not work traditionally performed by seamen. Ibid.

## CLAIM BASED ON NEGLIGENCE

The libelant charges that the respondent was negligent in that it failed to exercise reasonable care to furnish him with a safe place to work. The trial judge concluded, on findings of fact supported by substantial evidence, that the respondent owed no duty to the libelant. This conclusion is challenged as erroneous.

The accident occurred on the morning of April 1, shortly after 7:30 A.M., while the S.S. Exochorda was still in the possession and control of Bethlehem Steel. The libelant and another workman, accompanied by their foreman, descended from the main deck to the 'tween deck, where they made an inspection of painting work which had been completed in the laundry on the previous day. Then, intending to return to the main deck by way of a ladder located in a cargo hold, they walked along a lighted passageway into the hold, which was in semidarkness, the portable lights having been removed the previous day.[3] As the libelant proceeded across a hatch cover, he fell through an opening which had been created by the removal of two boards. There was some conflict in the testimony as to who had removed the boards. However, the trial judge found that the boards had been removed during the night prior to the accident by employees of Bethlehem Steel on the orders of a job supervisor.

■■ The shipowner in possession and control owes a duty of reasonable care to workmen who come aboard the vessel to make repairs. The duty is to exercise reasonable care to furnish the workmen with a safe place to work. Mesle v. Kea Steamship Corporation, 260 F.2d 747 (3rd Cir., 1958), cert. den. 359 U.S. 966, 79 S.Ct. 875, 3 L.Ed.2d 834 (1959); Brabazon v. Belships Co., 202 F.2d 904 (3rd Cir., 1953). However, the

3. Work in the hold had been completed on March 31, and after its completion the portable lights were removed and the main hatch was covered by the employees of Bethlehem Steel.

test of the shipowner's responsibility is possession and control. Where, as here, possession and control of the vessel are relinquished to an independent contractor, the shipowner owes no duty to the contractor's employees. West v. United States, and Latus v. United States, supra. It was said by the Supreme Court in the WEST case, 361 U.S. at page 123, 80 S.Ct. at page 193, 4 L.Ed.2d 161: "It appears manifestly unfair to apply the requirement of a safe place to work to the shipowner when he has no control over the ship or the repairs, and the work of repair in effect creates the danger which makes the place unsafe."

The libelant argues that possession and control of the S.S. Exochorda was retained by the respondent. The trial court found otherwise, and this finding, supported as it was by substantial evidence, cannot be held "clearly erroneous" under the rule of McAllister v. United States, 348 U.S. 19, 20, 75 S.Ct. 6, 99 L.Ed. 20 (1954). The libelant's argument rests on a rather tenuous factual basis which does not warrant discussion.

### EXCLUSION OF DEPOSITION

█ At the conclusion of the respondent's case the libelant offered in evidence, by way of rebuttal, portions of a deposition. This deposition was that of a mate employed aboard the S.S. Exochorda while the work of renovation and deactivation was in progress. The offer of proof was rejected, and thereupon the libelant withdrew the deposition and did not make it a part of the record. It has been established that under these circumstances we are not required to consider the assignment of error predicated on the exclusion of the deposition. Palmer v. Hoffman, 318 U.S. 109, 116, 63 S.Ct. 477, 87 L.Ed. 645 (1943). We have nevertheless considered the question raised on the merits.

█ The mate was in attendance throughout the trial but was not called as a witness by either party. However,

the libelant argues that the deposition was that of a "managing agent," and was therefore admissible under Rule 30A(d)(2) of the Rules of Practice in Admiralty and Maritime Cases, as amended, 28 U.S.C.A.[4] We do not agree. The mate was not per se a "managing agent" within the meaning of the rule. The admission of his deposition would have been error. Naylor v. Isthmian S.S. Co., 187 F.2d 538, 540 (2d Cir., 1951); see also Santiago v. American Export Lines, Inc., 30 F.R.D. 372 (S.D.N.Y.1962). It appears from the undisputed testimony in the record that the position of the mate was that of an inferior officer who had no supervisory authority and acted under the supervision and direction of his superior, a port engineer in the employ of Export Lines. It is clear that under these circumstances it cannot be held that the mate was a "managing agent." Ibid.

The judgment of the District Court will be affirmed.

---

4. The brief of the appellant incorrectly cites as authority the Federal Rules of Civil Procedure.