For the foregoing reasons, judgment will be entered for defendant with costs taxed to the plaintiff.

John **CHESTNUT**, Libelant,

v.

**UNITED STATES** of America, Respondent,

and

**Sun Shipbuilding & Dry Dock Co.,** Respondent-Impleaded.

Civ. A. No. 55 of 1965.

United States District Court, E. D. Pennsylvania.

Sept. 24, 1971.

970

Raymond J. Quaglia, Philadelphia, Pa., for libelant.

Victor L. Drexel, Philadelphia, Pa., for respondent.

## OPINION

HUYETT, District Judge.

Respondent, United States of America, has moved for dismissal of libelant's action pursuant to Fed.R.Civ.P. 41(b) following presentation of libelant's case on the issue of liability only before the Court without a jury, on the ground that upon the facts and the law libelant has shown no right to relief.

### FINDINGS OF FACT

1. On February 15, 1963, John Chestnut was employed by Sun Shipbuilding & Dry Dock Company as an outside machinist on the third shift.

2. On February 4, 1963, the dredge "Comber", owned by the United States, arrived at the shipyard for conversion along with some repairs pursuant to a contract between the United States and Sun Shipbuilding and Dry Dock Company.

3. The work on the dredge "Comber" commenced on her arrival at the shipyard and was completed shortly after May 3, 1963.

4. While the "Comber" was at the shipyard her generators, steering gear, fire pumps, and lifeboats were inoperative and all services including steam, electricity, and water were furnished from the shore.

5. While the "Comber" was at the shipyard her regular crew of 96 officers and men was reduced to 26 persons whose only duties were housekeeping and inspection.

6. While the "Comber" was under repair no living quarters were open and the skeleton crew completed duty at 16:30 hours each day.

7. On February 15, 1963, at approximately 2:00 A. M. John Chestnut, in the course of his duties as an outside machinist employed by the shipyard, slipped and fell on grease in a winch well and sustained personal injuries as a result of the fall.

8. The origin, nature and extent of the grease is unknown.

9. The libelant at the time of his injury was engaged in the dismantling of the forward port winch which is a procedure rarely performed at sea.

10. On February 15, 1963, the "Comber" was totally unable to function as a vessel or to perform the functions for which she was intended since as of that date all her fuel and steam had been removed, electricity had been disconnected, and the steering gear was inoperative.

11. John Chestnut, on February 15, 1963, was performing his work under the exclusive supervision and control of his employer, Sun Shipbuilding and Dry Dock Company.

12. At no time during the entire period that the "Comber" was at the shipyard did any officer, crew member or civilian employee of the Government give any direction or instruction as to the manner in which the repairs and conversion were to be done by the shipyard or its employees.

13. The cost of repairs and conversion exceeded $800,000 and the general pattern of repairs and conversion of the "Comber" were exclusively within the competence of the shipyard and were not of a nature that could be performed by members of the crew.

14. The dredge "Comber" was withdrawn from navigation before, on, and after February 15, 1963.

15. The control of the dredge "Comber" was in the shipyard at the time of the accident.

## DISCUSSION

Libelant seeks recovery from the United States for injuries sustained on the dredge "Comber" on the grounds that the vessel was unseaworthy and that the negligence of the United States, as owner, caused the injury.

### Seaworthiness

The Third Circuit has summarized clearly the law dealing with the warranty of seaworthiness in McDonald v. United States, 321 F.2d 437, 439 (1963):

"We recognize at the outset, as we must, that under the implied warranty of seaworthiness the shipowner is under a duty to maintain the vessel, its gear and appurtenances, reasonably safe and suitable for the purposes intended. This duty, which is absolute and nondelegable, is owed not only to the members of the crew but also to the shore based employees of an independent contractor engaged aboard ship in work customarily performed by seamen. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946); Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953). However, it has been authoritatively settled, if it was ever in doubt, that the implied warranty may not be invoked as a basis of liability where the vessel has been withdrawn from navigation and is undergoing extensive renovation and repairs. West v. United States, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161 (1959); Latus v. United States, 277 F.2d 264 (2d Cir., 1960), cert. den. 364 U.S. 827, 81 S.Ct. 65, 5 L.Ed.2d 55 (1960). It has been held that in these circumstances there is no warranty of seaworthiness. Ibid."

West concerned a United States vessel which had been deactivated for several years and then turned over to an independent contractor for reactivation and a complete overhaul. An employee of the contractor was injured while working inside a low pressure cylinder when a loose-fitted plug hit his knee. Under the work agreement the contractor was to have complete responsibility and control of the repairs with the United States retaining only the right to inspect the work and materials to insure compliance with the contract. The United States placed six men on board the vessel for inspection purposes. On the facts of West the Supreme Court affirmed a judgment denying recovery against the shipowner for negligence and unseaworthiness. The Court held that the vessel was not in maritime service and the warranty of seaworthiness, therefore, did not apply.

Although the instant case does not involve the reactivation of a ship in moth balls, the principles set out in West are nevertheless applicable to a consideration of whether the dredge "Comber" was in navigation at the time of libelant's accident. The "Comber" entered the shipyard on February 4, 1963, for extensive repairs and conversion which were not completed until after May 3, 1963. The cost of repairs and conversion exceeded $800,000 and were undertaken pursuant to a contract by which the United States retained only the right of inspection for compliance with the contract. While the vessel was at the shipyard, her generators, steering gear, fire pumps and lifeboats were inoperative and services such as steam, electricity, and water were furnished from the shore. In addition, while the vessel was under repair no living quarters were open and only a skeleton crew remained on board during daylight hours for housekeeping and inspection purposes. The only reasonable conclusion that can be reached from the above circumstances is that the "Comber" was not in navigation at the time of libelant's injury. Consequently, the war-

ranty of seaworthiness does not extend to libelant.[1]

### Negligence

■ The shipowner in possession and control owes a duty of reasonable care to workmen who come aboard the vessel to make repairs. The duty is to exercise reasonable care to furnish the workmen with a safe place to work. *McDonald*, 321 F.2d at 440. The test, however, of the shipowner's responsibility is possession and control. Where possession and control of the vessel are relinquished to an independent contractor, the shipowner owes no duty to the contractor's employees. *McDonald*, 321 F.2d at 441. In the instant case the two hundred to three hundred men who effected the repairs on the "Comber" were all Sun Shipbuilding employees. They had complete control of the work subject to inspection by Government officials for compliance with the contract. Consequently, an evaluation of all the evidence indicates that the United States did not exercise sufficient control over the vessel or the performance of repairs and conversion to merit the imposition of a duty of reasonable care.

■ The libelant further contends that even if the shipowner was not in control of the vessel at the time of the accident, the shipowner is still liable for a hidden or latent defect created by the negligence of a member of the ship's crew before control was turned over to the shipyard. Some cases have approved the theory of latent defect liability, Stark v. United States, 413 F.2d 253 (5 Cir. 1969), Van Horn v. Gulf Atlantic Towing Corp., 388 F.2d 636 (4 Cir. 1968), and others have indicated in *dicta* that recovery would be possible from a shipowner where a pre-existing latent defect could be proved. *West*, 361 U.S. at 124, 80 S.Ct. at 193; Murphy v. National Bulk Carriers, Inc., 310 F.Supp.

1246, 1251 (E.D.Pa.1970). Libelant to recover under such theory must establish the existence of a hidden or latent defect causing his injuries, and that such defect existed sometime prior to the relinquishment of control of the vessel by the owner to the contractor. Libelant has failed to produce credible evidence as to the nature and extent of the grease and its origin. It is possible that the grease resulted from the work of libelant and his co-worker in dismantling the winch. Significantly, libelant has not established the time of the creation of the alleged hidden or latent defect. Under these circumstances the owner of the vessel cannot be charged with responsibility under libelant's theory.

## CONCLUSIONS OF LAW

1. The dredge "Comber" was in navigable waters at the time libelant was injured and this Court has jurisdiction.

■ 2. The warranty of seaworthiness owed by a shipowner is extended to shipyard workers doing the type of work on a vessel in navigation which is customarily done by seamen.

■ 3. Whether or not the warranty is applicable depends upon the status of the vessel, the pattern of repairs and the extensive nature of the work contracted for rather than upon the particular job that each shipyard employee is doing at the moment of the injury.

■ 4. A review of the evidence including the contract between the United States and Sun Shipbuilding and Dry Dock Company, the work orders, progress schedules, and testimony at trial, leads the Court to the conclusion that as a matter of law the dredge "Comber" had been withdrawn from navigation to undergo repairs and conversion which took in excess of three months and that libelant is not entitled to the warranty of seaworthiness.

---

1. Although there was testimony that the task being performed by libelant at the time of his injury was rarely performed at sea, it need not be decided whether libelant was engaged in work traditionally done by a seaman. Such determination is rendered unnecessary by the conclusion that the vessel was not in navigation.

5. Where extensive repair and conversion work was being performed by the contractor, the owner reserving only a right of inspection, the shipowner was not exercising sufficient control to permit liability for negligence.

6. The presence of grease in the winch area did not constitute a pre-existing latent defect for which the shipowner is liable.

Accordingly, the Motion of Respondent, United States of America, for dismissal is granted, and judgment will be entered in favor of Respondent.[2]

2. The motion to dismiss as to Sun Shipbuilding and Dry Dock Company was granted at the outset of the trial without opposition from libelant.