James H. BRYANT, Appellant,

v.

NATIONAL TRANSPORT CORP. and National Shipping & Trading Corp.

No. 71–1519.

United States Court of Appeals, Third Circuit.

Argued April 3, 1972.

Decided July 18, 1972.

Allen J. Beckman, Richter, Syken, Ross & Binder, B. Nathaniel Richter, Gary C. Leedes, Philadelphia, Pa., for appellant.

Victor L. Drexel, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for appellee.

Before SEITZ, Chief Judge, HASTIE, Circuit Judge, and McCUNE, District Judge.

## OPINION OF THE COURT

HASTIE, Circuit Judge.

Predicating jurisdiction upon diversity of citizenship, plaintiff, an employee of Sun Shipbuilding and Dry Dock Co., hereinafter "Sun," brought this action against the owner and operator of SS *National Defender* for shipboard personal injury allegedly caused by the unseaworthiness of the vessel and by negligence in its operation. At the conclusion of the evidence, the trial judge directed a verdict for the defendants. This appeal followed.

SS National Defender is a huge tanker, nearly 800 feet in length. Sun contracted with the shipowner to receive the vessel onto its floating drydock and there perform various repairs. During the course of these repairs, plaintiff, a "leader" in Sun's rigging department, came aboard the drydocked ship to supervise the removal of certain "stripper piping" from the hold. For this operation Sun brought aboard and used a "tugger hoist," a portable crane owned by Sun. While the tugger hoist was thus in use, its boom collapsed and fell on plaintiff, inflicting the injuries in suit.

To support recovery for breach of warranty of seaworthiness plaintiff contends that the tugger hoist was an appurtenance of the vessel and that he himself was serving the ship much as a seaman would.

However, the record is clear that the plaintiff himself was not doing work that would justify extending to him the warranty of a seaworthy vessel which Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, affords shore based workers engaged in work traditionally performed by seamen.

Normal maintenance activities that are the responsibility of a ship's crew include some repair work. But a sensible and practical distinction can be and is drawn between repairs that can be and are likely to be made by seamen during the course of a voyage and repairs the nature and extent of which make them beyond the area of a seaman's normal responsibility. United New York and New Jersey Sandy Hook Pilots Ass'n, v. Halecki, 1959, 358 U.S. 613, 79 S.Ct. 517, 3 L.Ed.2d 541; Desper v. Starved Rock Ferry Co., 1952, 342 U.S. 187, 72 S.Ct. 216, 96 L.Ed. 205.

The plaintiff was supervising part of the removal of the entire elaborate complex of cargo stripper piping from the cargo hold of an enormous tanker. Plaintiff argues that because plaintiff and the men he supervised operated lifting machinery and were removing heavy objects from the hold, in legal contemplation they were performing work of seamen who also operate lifting machinery and remove heavy cargo from the hold. But this argument stresses a coincidental similarity while ignoring a basic difference.

The work undertaken in this case included the dismantling, removal and replacement of substantial permanent structures of the ship, to wit 1800 feet of deteriorated stripper piping, some of it 14 inches in diameter, none of it less than 8 inches.[1] Several lines of stripper piping within and running the length of each cargo tank serve the purpose of carrying oil as it is pumped out of the tank. The 8 inch stripper pipes are installed permanently along the length of the bottom of each tank to make possible the complete removal of residual oil which otherwise might remain, vaporize and cause the accumulation of an explosive mixture in the enclosed air space of almost empty tanks. It was a 30 foot

---

[1]. Also included in the contract for drydocking and repair of the ship was the removal of a 45 ton cracked propellor and the 40 ton propellor shaft for shoreside machine shop repairs that could not be made on the ship.

section of the 8 inch piping weighing 1620 pounds that Sun's employees had severed from its attachment and were lifting some 60 feet to the deck above when the accident in suit occurred.

To describe these fixed permanent structures, their function and the circumstances of their removal is sufficient to show that the operation in progress was the work of shipbuilders and not of seamen. Indeed, there was testimony that much of this large piping is bent, presumably to conform with the shape of a tank and that parts of it "cannot be duplicated on a ship." Thus, the coincidence that seamen's work and shipbuilders' work both may involve the mechanical lifting of heavy objects from the hold of a ship does not cause a shipbuilder to become functionally a seaman during that part of his structural work that involves such lifting.

■ We also agree with the district court that the tugger hoist which collapsed was not an appurtenance of the ship. It was owned by the contractor Sun. As already pointed out, it was brought on board and used solely for a repair operation such as would not be performed by the crew during the course of a voyage. In this critical respect the tugger hoist was different from equipment brought aboard by a stevedore for loading or unloading cargo, essentially a ship's activity and responsibility. True, to make this lifting equipment stable, the Sun employees fastened it to the deck for the period of its use there. But this temporary affixation does not make an independent contractor's equipment a ship's appurtenance when it is on board merely for a special purpose quite different from the work normally done by the ship's company in operating, maintaining, loading or unloading a vessel in navigation.

We hold that the warranty of seaworthiness neither applied to the tugger hoist nor protected a workman in the plaintiff's situation. *Cf.* McDonald v. United States, 3d Cir. 1963, 321 F.2d 437, cert. denied, 375 U.S. 969, 84 S.Ct.

487, 11 L.Ed.2d 417. In so deciding we do not reach the reasoned alternative holding of the district court that the warranty of seaworthiness was inapplicable here because the ship was not "in navigation."

■ The plaintiff also argues that the jury should have been allowed to decide whether the accident was caused by negligence on the part of the defendant shipowner in failing to use reasonable care to provide plaintiff with a safe place to work. This argument is difficult to follow since it was the defective condition of the independent contractor's equipment, or its careless use by the contractor's employees, that caused the accident. Certainly, the shipowner "was under no duty to protect . . . [the contractor's employees] from risks that were inherent in the carrying out of the contract." West v. United States, 1959, 361 U.S. 118, 123, 80 S.Ct. 189, 193, 4 L.Ed.2d 161.

■ In any event, the evidence would not support a finding that the shipowner had retained possession or control of the area or the activity in which the accident occurred. As the Supreme Court has observed it is "manifestly unfair to apply the requirement of a safe place to work to the shipowner when he has no control over the ship or the repairs, and the work of repair in effect creates the danger which makes the place unsafe." West v. United States, *supra* at 123, 80 S.Ct. at 193. Accord, McDonald v. United States, *supra*. Here the record shows that, while in Sun's drydock for repair by Sun, the vessel was in Sun's possession and under its control. True, ship's officers were present during working hours to inspect the work as completed or in progress. But this did not amount to such possession and control as would support a duty to provide Sun's workmen with a safe place to work. Sun, using its own equipment, remained solely responsible for the execution and supervision of the repair.

Plaintiff makes much of the fact that on an occasion prior to the accident an

unidentified member of the ship's company had complained to him that in lifting stripper piping from a tank Sun's workmen were causing damage to handrails inside of the tank. But that complaint was no different from the remonstrance any property owner would make on discovery that a repairman was unnecessarily damaging the premises. For present purposes this evidence was not significant.

The judgment will be affirmed.