Helmut B. SPECHT

v.

PITTSBURGH COAL COMPANY, a Division of Consolidation Coal Company, and Campbell Barge Lines.

Civ. A. No. 74–746.

United States District Court, W. D. Pennsylvania.

Dec. 2, 1975.

Edwin H. Beachler, Pittsburgh, Pa., for plaintiff.

Karl Alexander, Rose, Schmidt & Dixon, Pittsburgh, Pa., for defendant, Pittsburgh Coal Co.

Stephen W. Graffam, Pittsburgh, Pa., for defendant, Campbell Barge Lines.

## OPINION

ROSENBERG, District Judge.

This matter is before me on motions for summary judgment by both defendants, Pittsburgh Coal Company, a Division of Consolidation Coal Company (Consol) and Campbell Barge Lines (Campbell) against the plaintiff, Helmut B. Specht. The defendants' motions are based upon the record of this case, which consists of the plaintiff's deposition of November 22, 1974 and uncontradicted answers of the defendant to the plaintiff's interrogatories. From all of these certain uncontradicted essential facts appear which lend a foundation to the elements of law which must be applied in this case. The plaintiff Specht was the employee of the defendant Consol who was contracted to repair the M/V D. J. Johnson owned by Campbell.

From the allegations of the complaint, the averments as set forth in the pretrial statement as filed by the plaintiff, and from the deposition of the plaintiff, it is undisputed that the plaintiff was attempting to remove external rubber stripping from the defendant Campbell's vessel, the M/V Johnson, and while so engaged, the old rubber stripping which he was removing flew backwards, knocked him off the scaffolding and injured him. The plaintiff alleges that while performing this function

he was engaged as a seaman and that while working on the scaffolding alongside the M/V Johnson, he was injured permanently.

From the record the facts appear that the defendant, Campbell had contracted with the defendant Consol to do specific repair work on the M/V Johnson at the defendant Consol's Marine Ways adjacent to the Monongahela River, Elizabeth, Pennsylvania, and that the vessel was out of the water resting on a cradle on shore while the contracted repairs were being done. It was also undisputed that the Marine Ways' function is to repair towboats, barges and other vessels, mechanically and structurally.

The plaintiff alleges jurisdiction under the Jones Act, 46 U.S.C. § 688 et seq. and under applicable maritime laws, together with the doctrine of pendent jurisdiction. He contends different theories of liability for each defendant. As to the defendant Consol, his employer, the plaintiff contends that:

(1) it was negligent in violation of the Jones Act by
 (a) failing to provide a safe place to work;
 (b) failing to provide seaworthy facilities and equipment;
 (c) failing to provide a sufficient crew;
 (d) failing to provide a competent crew;
 (e) requiring the plaintiff to place himself in a dangerous position;
 (f) failure to warn of dangers; and
 (g) being negligent, and

(2) it failed to provide the plaintiff with a seaworthy vessel and equipment, which resulted in the plaintiff's injury. The plaintiff also contends that the defendant employer Consol has not furnished him with maintenance and cure.

As to the defendant, Campbell, the plaintiff contends that:

(1) the M/V D. J. Johnson was in unseaworthy condition which resulted in his injuries; and

(2) this defendant was negligent because of inadequate warning to the plaintiff of the dangers aboard the M/V Johnson, when it knew or should have known of the defective condition of the rubber stripping which caused his injury.

In the defendant Consol's Motion for Summary Judgment, it, as the employer of the plaintiff and as an independent contractor, contends that the plaintiff Specht:

(1) was not a seaman under the Jones Act at the time of his injury and while under its employ; and

(2) is not entitled to recover against it on the basis of lack of seaworthiness.

The plaintiff argues that there is enough evidence on the record to preclude summary judgment and allow this issue to go before a jury. The plaintiff charges that his employment included securing of boats and barges with ropes, working consistently with the towboat M/V Elizabeth, owned by the defendant Consol, checking boats and barges for leaks on disrepairs and in moving vessels with the M/V Elizabeth in the checking and making of repairs. However, in his answers in the deposition the plaintiff admitted that he had not been on the M/V Elizabeth for a period of up to three or four years before the date of the taking of the deposition in 1974, while the accident occurred in 1972. Also, that he was an iron worker and a member of the Iron Workers Union 5400. The plaintiff's assertion is also to the effect that he worked both in the shop on shore and in the repair of boats and barges when necessary.

■ An individual is a seaman under the Jones Act [1] if (1) the ship is in navigation; (2) there is more or less a permanent connection with the ship and (3) the worker be aboard primarily to aid in navigation. *Griffith v. Wheeling Pittsburgh Steel Corp. and American Commercial Lines, Inc.*, 521 F.2d 31, C.A. 3, 1975.

---

1. 46 U.S.C. § 688 (in part) Recovery for injury to or death of seaman. "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right by trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; . . . ."

■ As the *Griffith* case directs, I must scrutinize the record carefully before summary judgment is granted on the issue of seaman status. However, after doing so, only one simple difference exists between this case and *Griffith*. The plaintiff here is a repairman rather than a loader of cargo. The noticeable similarities in the two cases are (1) that the repairman in this case and the loader of cargo in *Griffith* lacked permanency of vessel relationship; and (2) that the employment of both the repairman in this case and of the loader in *Griffith* were not aboard the respective boats primarily for the purpose of aiding in navigation. In the *Griffith* case he was aboard for the purpose of loading its cargo. In this case, the repairman was not actually aboard but on the side of the boat for the purpose of removing the old rubber stripping and replacing it with new. To be a seaman under the Jones Act these two elements are requirements which must be met. They are not met here.

If the plaintiff had any connection permanent or otherwise it was with the towboat M/V Elizabeth where during the past some work had taken place. The plaintiff's injury occurred from an accident involving the rubber stripping of the M/V Johnson, which was not being moved at that time but was rather up and out of the water. Repair of the rubber stripping was that action that caused the injury and not the moving or removing of the vessel from the Marine Ways. The plaintiff had only a temporary relationship with this particular vessel and this does not as a matter of law give rise to his being included as a seaman, for his primary function as an employee of defendant Consol was to repair vessels while in their control.

Also the plaintiff was not aboard the vessel or connected with it to aid in its navigation. While work was being done, the vessel was stationary, out of the water, completely free of fuel, and under other repairs. Moreover, the plaintiff was not injured while the boat was entering or leaving the defendant Consol's charge. These facts are from interrogatories and depositions filed.

The determination as to whether the vessel was "in navigation" need not be decided because in the first instance, it is in dispute and should be left for a jury determination and secondly, it is not essential in determining the status of seamanship where the other requirements are not met. *Griffith, supra.* As a matter of law, I conclude that the plaintiff Specht was not a seaman at the time the injury occurred.

■ As to the argument that the defendant Consol breached its implied warranty of seaworthiness, it is well settled that under the implied warranty of seaworthiness "the shipowner is under a duty to maintain the vessel, its gear and appurtenances, reasonably safe and suitable for the purposes intended." *McDonald v. United States,* 3 Cir., 321 F.2d 437, 439 (1963). Being absolute it also extends beyond the vessel's crew to shore-based employees of independent contractors working aboard ship in work customarily performed by seamen. *Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946); *Pope & Talbot, Inc. v. Hawn,* 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953); *Bryant v. National Transport Corp.,* 3 Cir., 467 F.2d 139 (1972); *McDonald v. United States, supra.* Nevertheless, the implied warranty will not be extended in cases where the vessel is not in navigation undergoing extensive repair. *West v. United States,* 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161 (1959); *Bryant v. National Transport Corp., supra; McDonald v. United States, supra.*

The plaintiff Specht contends that the defendant, Consol, the employer, being in complete control and possession of the vessel is the owner *pro hac vice* and must make the vessel seaworthy. Also the vessel was "in navigation" extending the doctrine to include himself. As was stated above, a determination as to whether the M/V Johnson was "in navigation" is a factual dispute and should be allowed to go to a jury. However, it should be determined whether (1) there was a doctrine of seaworthiness in this case, and (2) if there was, did it apply here.

Because it is the shipowner's duty to maintain the vessel, its gear and appurtenances in a safe condition, an individual who is connected in some way with the vessel relies upon this implication when he works at or on the vessel itself. In other words, an individual assumes that the vessel is seaworthy as warranted by the vessel owner. However, the situation changes when the owner has directed an independent contractor to take his vessel into his drydock and make specific repairs in order to enable the vessel to return to the water and operate in a safe and orderly fashion. Thus it is that the independent contractor and his employee work to repair that which is not in a seaworthy condition. He cannot rely on an implied warranty of seaworthiness for that which he is directed to make seaworthy. The Third Circuit Court of Appeals held in *Bruszewski v. Isthmian S.S. Co.,* 163 F.2d 720, at page 722 that:

> "Logically construed, liability for an unseaworthy vessel should obtain only when the individual affected is entitled to rely, and does rely, upon the seaworthiness of something actually unseaworthy. To state that a broken boom is warranted as seaworthy would require distortion of the meaning generally accorded those terms. 'The mere fact that a seaman has been ordered to do a dangerous thing does not establish a case of unseaworthiness. *Chelentis v. Luckenbach, S.S. Co.,* 1918, 247 U.S. 372, 38 S.Ct. 501, 62 L.Ed. 1171.' *The Josephine & Mary,* 1 Cir., 1941, 120 F.2d 459 at page 464.

The instant case is not unlike *Byars v. Moore-McCormack Lines,* 2 Cir., 1946, 155 F.2d 587. Denying recovery for injuries sustained on board a vessel, the court quoted with approval the following excerpt from *Kowalsky v. Conreco Co.,* 1934, 264 N.Y. 125, 190 N.E. 206, 207: 'An employee cannot recover for injuries received while doing an act to eliminate the cause of the injury. As was said in *Mullin v. Genesee County El. L., P. & Gas Co.,* 202 N.Y. 275, at page 279, 95 N.E. 689, 690: "The reason for this exception to the general rule is that it would be manifestly absurd to hold a master to the duty of providing a safe place when the very work in which the servant is engaged makes it unsafe."' Applying this principle to the case at bar, we deem it irrefutable that the broken boom, an elaborate mechanism, presented an obvious danger to those removing it. Very different is this from the situation presented in *Seas Shipping Co. v. Sieracki,* supra, where the plaintiff suffered injury as the result of a defective appliance which appeared otherwise."

See also, *Williams v. Avondale Shipyards, Inc.,* 452 F.2d 955, C.A. 5, 1971; *Parker v. Cargill, Inc.,* 417 F.2d 772, C.A. 5, 1969; *Grigsby v. Coastal Marine Service of Texas, Inc.,* 412 F.2d 1011, C.A. 5, 1969.

In this instance, the plaintiff was well aware of his directions to remove a worn rubber stripping from the M/V Johnson. He was to repair and make seaworthy that which he knew was in disrepair. Therefore, he cannot rely upon an implied warranty of seaworthiness from the owner or the owner *pro hac vice* for there is none.

Alternatively, even if there was a doctrine of seaworthiness it would not be applicable to the present situation because for in order for it to apply to the plaintiff Specht, it must be shown that in fact the defendant Consol was the owner *pro hac vice* and that the plaintiff as an off-shore based employee was doing traditional seaman's work. First, the plaintiff relies on the misplaced argument that the defendant employer Consol was the owner *pro hac vice* of the vessel thereby incurring the responsibility for its seaworthiness. In *Rao v. Hillman Barge and Construction Company,* 467 F.2d 1276, C.A. 3, 1972, it was held:

> "Appellee was not the owner of the barge, and, therefore, cannot be held liable for its alleged unseaworthiness. Moreover, appellee was not the owner *pro hac vice* so as to incur an owner's responsibility for a vessel's unseaworthiness. The barge was not afloat, was not capable of being navigated, and was not moved by appellee's employees. For these reasons, *Blair v. United States Steel Corp.,* 444 F.2d 1390 (3d Cir. 1971), is inapplicable.

"The relationship necessary for application of the doctrine of ownership *pro hac vice* is ordinarily that of bareboat charterer-shipowner. That relationship is distinguishable from the stevedore-shipowner relationship, *Miller v. Union Barge Line Corp.,* 299 F.Supp. 718 (W.D.Pa. 1969), or the ship repairer-shipowner relationship present in this case. See *Guzman v. Pichirilo,* 369 U.S. 698, 82 S.Ct. 1095, 8 L.Ed.2d 205 (1962); cf. *Delta Engineering Corp. v. Scott,* 322 F.2d 11 (5th Cir. 1963), reh. denied, [5 Cir.,] 325 F.2d 432, cert. denied 377 U.S. 905, 84 S.Ct. 1164, 12 L.Ed.2d 176 (1964). It may be observed that in an analogous fact situation, we held the bareboat charterer, not the ship refitter, liable for unseaworthiness as the owner *pro hac vice. Hawn v. Pope & Talbot, Inc.,* 198 F.2d 800 (3d Cir. 1952), affd. 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953)." (at page 1277).

 Although here the M/V Johnson was moved into the cradle by the employees of the defendant Consol, it was not afloat or capable of being navigated. The defendant Consol was hired to make repairs on the vessel as was Hillman in the *Rao* decision, *supra.* The defendant Consol as was Hillman cannot be held to be an owner *pro hac vice.* Secondly, the plaintiff Specht was employed as an iron worker, deckhand and docker as admitted in his deposition, but in this case he was to remove rubber stripping from the vessel. While it is true that the stripping could have been replaced while the boat was afloat, it is only reasonable to believe that because of all that was to be done as repairs, members of the crew could not have done what the defendant Consol was doing while the vessel was traveling.

The facts are again analogous to the *Rao* case:

"Additionally, aside from the crucial issue of vessel ownership, the repair work here in progress was not the type of work in which seamen have traditionally engaged. Therefore, the doctrine of *Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), is not applicable. At the time of the injury, appellant was a helper to a paint sprayer who was painting a barge which not only had been removed from the water, but was resting on a cradle in dry dock. Acknowledging that painting, or assisting a painter, may be performed by a seaman aboard a vessel there is a basic distinction between minor maintenance painting when a vessel is moving or in port, and painting as a part of a major overhaul in which the vessel is beached and resting on a cradle. What was said by Judge Hastie in *Bryant v. National Transport Corp.,* 467 F.2d 139 at 140 (3d Cir. 1972) is pertinent here:

'Normal maintenance activities that are the responsibility of a ship's crew include some repair work. But a sensible and practical distinction can be and is drawn between repairs that can be and are likely to be made by seamen during the course of a voyage and repairs the nature and extent of which make them beyond the area of a seaman's normal responsibility. *United N.Y. and N.J. Sandy Hook Pilots Assn. v. Halecki,* 1959, 358 U.S. 613, 79 S.Ct. 517, 2 L.Ed.2d 541 . . . .' " (at pages 1277 and 1278).

Thus, even if there were a doctrine of seaworthiness available to the plaintiff as a cause of action, it would be inapplicable to this case because (1) the defendant Consol, as the plaintiff's employer, was not the owner *pro hac vice* of the vessel, and (2) the work being done by the plaintiff was not that traditionally done by seamen.

Accordingly, the defendant Consol's motion for summary judgment will be granted because there is no genuine issue of material fact.

On the defendant Campbell Barge Lines' Motion for Summary Judgment, as the owner of the vessel, the M/V D. J. Johnson, it is argued that as a matter of law (1) it was not incumbent upon Campbell to extend a warranty of seaworthiness to the plaintiff; and (2) Campbell owed the plaintiff no duty of care because at all times material the vessel was in the exclusive possession and control of Consol.

As in reasons stated above in Consol's motion for summary judgment, I hold that

there was no doctrine of seaworthiness applicable to this action and therefore, the defendant owner Campbell owed no duty to the plaintiff to make the vessel seaworthy.

 As for the defendant Campbell's second contention in its motion that it does not owe the plaintiff a duty of care in warning the plaintiff adequately of dangerous conditions, I believe that such is justified. The plaintiff alleges that the defendant Campbell had a duty to warn the plaintiff of the dangerous conditions on the M/V Johnson. It is uncontroverted in the deposition of Mr. Johnson that the defendant Consol was notified that the rubber stripping be replaced. Obviously this means that it was defective. The plaintiff himself was chosen by his employer Consol to repair it. The plaintiff cannot reasonably contend that a reasonable man would not assume a defective condition within the rubber stripping itself if it were to be replaced at the direction of the owner of the vessel. Also, it would be absurd to claim that the defendant Campbell be held liable for failure to give notice of a dangerous condition when it brought the vessel to the defendant Consol's Marine Ways to have that condition remedied.

From examination of the record, including the deposition of Donald L. Johnson, Campbell's Marine Superintendent, it is shown that this character of repair work was done about every two years, because this was the longest period of time the vessel could go without this work being done. Also, it shows the extensiveness of the work done on the vessel: installation of new cutlass and intermediate bearings in the way of struts, port and starboard; removed both steering rudders, wheels and shafts; changed one propellor shaft, put one new shaft in and repaired the other; changed the wheels; new top and bottom steering rudder bearings and replaced one steering rudder; new rudder stripping; repair nosing on both sides.

The plaintiff cannot contend that he did not have notice of the defective rubber stripping when all the above repairs were to be accomplished and he could not expect to repair that which was in proper condition. The defendant owner Campbell cannot be held liable for negligence, failing to warn the plaintiff.

Accordingly, the defendant Campbell Barge Lines' motion for summary judgment will be granted because there is no genuine issue of material fact.