## ROGOSICH v. UNION DRY DOCK & REPAIR CO.

### No. 5096.

Circuit Court of Appeals, Third Circuit.
Oct. 23, 1933.

Rehearing Denied Nov. 23, 1933.

Lichtenstein, Schwartz & Friedenberg, of Hoboken, N. J. (John H. Kelley, of Hobo-ken, N. J., of counsel; Howard Engel, of Hoboken, N. J., on the brief), for appellant.

Lindabury, Depue & Faulks, of Newark, N. J. (Burtis S. Horner and Walter F. Waldau, both of Newark, N. J., of counsel), for appellee.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

THOMPSON, Circuit Judge.

This is an appeal from a decree in favor of the respondent in a suit in admiralty commenced by a libel in personam to recover damages for personal injuries sustained by the libelant. The facts are sufficiently set out in the memorandum opinion by Judge Fake, quoted in full in a note at the end of the opinion.

The libelant elected to sue in admiralty although, as a seaman, he might have sued at law under authority of the Jones Act (46 USCA § 688). That he made this election is apparent from statements made at bar by his proctor: "We do not proceed under the Jones Act. We proceed upon the theory that this is a tort cognizable in this court in admiralty." And again: "We are not proceeding under the Jones Act."

Later the following discussion took place:

"The Court: And your contention is that you are not suing under the provisions of the Jones Act?

"Mr. Kelley: Yes, your Honor, we did in the State court attempt to get the benefit of the Jones Act. We went in saying Rogosich, a carpenter, was a seaman.

"The Court: In other words, you elected where you had an election, not to proceed under the terms of the Jones Act, however beneficent they may have been for your cause of action.

"Mr. Kelley: That is why we came in here.

"The Court: But you come here on the basic admiralty jurisdiction over maritime torts.

"Mr. Kelley: Yes, your Honor.

"The Court: I have not, of course, read your libel. Is there anything in your libel which would indicate that you are here under the Jones Act?

"Mr. Kelley: No, your Honor, there is no reference in there to any legislation whatsoever. We allege negligence which resulted in this servant's injury.

"The Court: Now, as I understand counsel for the respondent in his argument, he took the position that the facts disclosed by

you force you into the terms and provisions of the Jones Act. Is that correct?

"Mr. Horner: Yes, sir. That is correct."

The libelant now contends that the court erred in restricting him to such remedies as were available to him in admiralty, and maintains that he was entitled to rights accorded a seaman by the Jones Act.

This act provides as follows: "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply. * * *" Section 33.

The statutes referred to, which are applicable to an action at law maintained by a seaman, are those incorporated in 45 USCA §§ 51 to 59, inclusive, known as the Federal Employers' Liability Act. Section 56 of that title limits the period for instituting suit as follows: "No action shall be maintained under this chapter unless commenced within two years from the day the cause of action accrued. * * *"

█ The alleged cause of action accrued on December 9, 1925, and the libel was filed on December 22, 1927. The time within which the seaman had the right to maintain an action for damages at law had, therefore, expired by reason of the statute of limitations contained in the Federal Employers' Liability Act, supra. After the expiration of the two year period, the libelant's only remedy was in admiralty.

██ The libelant, while engaged in repairing a scow on the respondent's dry dock upon navigable waters, had the status of a seaman. Kuhlman v. W. & A. Fletcher Co. (C. C. A.) 20 F.(2d) 465. In the absence of statute, a seaman may recover compensatory damages in admiralty only upon proof of unseaworthiness of the vessel. Pacific S. S. Co. v. Peterson, 278 U. S. 130, 49 S. Ct. 75, 73 L. Ed. 220; Chelentis v. Luckenbach S. S. Co., 247 U. S. 372, 38 S. Ct. 501, 62 L. Ed. 1171; The Osceola, 189 U. S. 158, 23 S. Ct. 483, 47 L. Ed. 760. Although the term "unseaworthiness" might possibly be extended to cover a case where the owners selected and employed an incapable crew as fellow servants of the libelant, we think the trial court did not err in concluding from the evidence that there was no proof upon which to base a finding of unseaworthiness in that respect.

█ The right to recover for injuries due to the negligence of a fellow servant, accorded a seaman by the Jones Act, may be asserted under the admiralty forms of procedure and pleadings (Baltimore S. S. Co. v. Phillips, 274 U. S. 316, 47 S. Ct. 600, 71 L. Ed. 1069; Panama R. R. Co. v. Johnson, 264 U. S. 375, 44 S. Ct. 391, 68 L. Ed. 748); but, inasmuch as the statute of limitations had run, the trial court rightly restricted the libelant to his right to recover for injuries due to unseaworthiness of the vessel.

█ The libelant's claim is based upon the alleged negligence of his fellow servants. As already indicated, the terms of the Federal Employers' Liability Act were inapplicable because the statute of limitations had run. We conclude that, in the absence of proof of negligence in the selection of the libelant's fellow servants, the respondent was entitled to defend upon the ground of nonliability to its employee for injuries due to the negligence of such fellow servant. The Osceola, supra; Quebec S. S. Co. v. Merchant, 133 U. S. 375, 10 S. Ct. 397, 33 L. Ed. 656.

Finding no error in the rulings and conclusions of the court below, the decree is affirmed.

---

NOTE.—The following is the opinion of Fake, District Judge.

This is a suit in admiralty wherein the libelant seeks indemnity for personal injuries sustained while in the employ of the defendant. The facts are as follows:

Libelant, a ship carpenter, was working on a scaffold which consisted of planking placed upon sawhorses some eight or nine feet from the deck of a floating dry dock. Immediately preceding the accident he was engaged in pounding with a wooden mall against a plank which was being fastened to the ribs or frames of the hull of the car float. His pounding caused a wedge, which had been placed between the spol and the plank which was to be bent in, to fall out of its position. This caused slack in the tackle which had been attached to the top of the spol. The tackle passed over the rail of the float at a point six inches aft of a point thereon where the rail tapered off at an angle downward toward the deck in the direction of the bow. On the falling out of the wedge and the consequent slackening of the pressure on the tackle, the tackle lines slipped down the sloping plane of the rail toward the forward deck, giving further slack to the tackle lines and greater freedom to the spol, which in turn fell striking libelant on the head, causing him to fall. In his fall he struck a large block on the way down, and landed on or near a large propeller which was lying on the deck of the dry dock, sustaining injuries which have totally disabled him.

The tackle annexed to the spol had been made fast to a stanchion immediately prior to the accident, and there is nothing in the evidence to show that it did not remain so fastened after the accident.

A question arose at the trial as to whether or not the usual practice in the use of spols required the extension of guy ropes; and from the evidence in

this case I find that such was not the practice. Question also arose as to whether or not the tackle was properly manned, and handled in a seaman-like manner, or, to put it in other words, whether there was negligence in the manner of the handling of the tackle. On this point the testimony shows that there were three men upon the deck of the car float, one of whom was a subforeman who has been referred to as the "snapper." The snapper had looped a line over the after end of the plank which the workmen were attaching to the frames of the hull and had made this line fast to a cleat on the rail of the float, and was standing in a position on the float a foot and a half inside of the rail on the float. One Tarabachio, a member of the tackle crew, was standing upon the deck of the float toward the bow, three or four feet away from the point where the tackle lines crossed the deck of the float and was there engaged, he says, in arranging additional tackle giving no attention to the spol. Another man stood upon the deck forward of the point where the tackle crossed, one Vittorio, and he was engaged in holding the loose end of the tackle which had been made fast to the stanchion by ropes and was looking toward the snapper for any orders the snapper might issue in regard to the handling of the tackle. He was so engaged when the spol and the tackle slipped laterally forward toward the bow.

When called upon to state the theory upon which this cause of action is based, proctor for libelant stated: "We do not proceed under the Jones Act. We proceed upon the theory that this is a tort cognizable in this court in admiralty." Whereupon proctor for respondent moved to dismiss the libel on the ground that the suit is instituted under the Jones Act (41 Stat. 988) and not commenced within the two-year limitation fixed by that act. It is true that the acts complained of in the libel occurred on December 9, 1925, and the libel was not filed until December 22, 1927, thus lacking thirteen days of being within the two-year period; but the libel here does not refer to the Jones Act, and this factor taken in connection with the statement of libelant's proctor leads to the inescapable conclusion that the action is for a maritime tort under the old rules.

The Jones Act, 46 USCA § 688, provides that a seaman may at his election maintain an action at law for damages and thereby receive the benefits of the provisions of the statutes relating to injuries sustained by railway employees. In dealing with what was intended by such election under the Jones Act, Mr. Justice Sanford said in Pacific S. S. Co. v. Peterson, 278 U. S. 130, 49 S. Ct. 75, 78, 73 L. Ed. 220: "And we conclude that the alternative measures of relief accorded him, between which he is given an election, are merely the right under the new rule to recover compensatory damages for injuries caused by negligence and the right under the old rules to recover indemnity for injuries occasioned by unseaworthiness."

It therefore follows that if this cause is to sustained it must be upon the theory that libelant's injuries were caused by unseaworthiness. In this connection our attention has been directed to The Rolph (C. C. A.) 299 F. 52, wherein it was held that unseaworthiness embraced the employment of a mate known to be brutal, violent, and inhuman, and who assaulted a member of the crew. Obviously, this is sound, since seaworthiness contemplates reasonable care in choosing competent officers and crew. This then leads us, in the instant case, to an examination as to the competency of the tackle crew employed in attaching the plank to the hull of the barge, and it must be concluded from the evidence that each of them was experienced and qualified in the work on which he was engaged, and there is no evidence whatever on which a conclusion may be based that respondent was negligent in so employing them. Nor does the evidence show that there was any failure upon the part of respondent to furnish either a safe place to work or adequate equipment or sufficient inspection and superintendence.

The proximate cause of libelant's injury is found in two factors: The one, libelant's pounding on the plank thereby causing the wedge to loosen; and, the other, the unprotected manner in which the lines of the tackle passed over the rail six inches from a point where the rail tapered or inclined downward. It is apparent that any appreciable slacking of the tackle lines might cause the same to slide down the tapered or declined portion of the rail, and this is exactly what happened. The fastening of the tackle in this manner without guarding the lines against slipping, coupled with knowledge of the nature of the operations incident to inserting the plank on the side below, by wedging and nailing and pounding, was negligent, and this negligence is attributable to the men who were employed on the tackle and not to libelant. This now brings us to the question as to whether or not the fellow-servant rule applies. In view of the numerous cases reported on this subject, it is quite unnecessary to repeat the antiquated but still surviving reasons which underlie the rule and its application. It is sufficient to say that so far as a libel proceeding based upon a maritime tort under the old rules is concerned, the fellow-servant doctrine does apply, and inasmuch as it appears that the tackle crew as well as libelant and those with him on the scaffold, were all engaged in a common enterprise, to wit, the insertion and fastening of the plank and the authority and responsibility of any one of them was no greater than that of any of the others so far as libelant was concerned, it must be concluded that the injuries sustained by libelant were caused by a fellow servant under risks which libelant assumed on entering the employment. No difference in principle can be seen under the facts here than would be presented where all those employed at bending in the plank stood upon the scaffold and one or more of them negligently allowed it to snap out causing personal injury to one who was inserting the wedge. The fact that some of the workmen were on the deck above does not take them out of the fellow-servant rule.

Having disposed of the issues on their merits, I do not deem it necessary to pass upon the question of laches.

A decree will be entered for respondent.