PATRICK H. BERRY, Plaintiff-Appellee and Cross-Appellant, *v.* AMERICAN COMMERCIAL BARGE LINES *et al.*, Defendants-Appellants and Cross-Appellees.

Fifth District    No. 82—4

Opinion filed May 27, 1983.

KASSERMAN, J., dissenting.

Dunham, Boman & Leskera, of East St. Louis (Howard Boman and Eric C. Young, of counsel), for appellants.

William E. Brandt, of William E. Brandt & Associates, of Granite City, and George J. Moran, Sr., of Callahan & Moran, of Trenton, for appellee.

JUSTICE WELCH delivered the opinion of the court:

Plaintiff Patrick Berry was employed as a first class shipfitter at facilities operated by subsidiaries of American Commercial Barge Lines (ACBL) on the Mississippi River at Alton, Illinois. On November 29, 1973, he was working on an inclined metal surface known as a slope sheet on barge vessel S—127 which had been brought to ACBL's floating drydock for repairs. While assisting a welder in replacing a metal patch on that surface, the plaintiff was temporarily blinded by the flash from the arc of the welder's rod when the welder accidently struck an arc in front of the plaintiff. He then lost his balance and attempted to descend the slope sheet so that he would not fall, but his foot became caught on a piece of metal called a scab, which is welded temporarily onto metal surfaces to give repair work-

ers more secure footing. The plaintiff fell, injuring his left knee.

On December 10, 1973, the plaintiff again sustained injuries to that knee. He was assigned to do repair work in the port side shaft alley of the motor vessel R.W. Naye, which had also been brought to the floating drydock. As he was heating shaft couplings with a rosebud torch, he slipped on grease which had accumulated on the floor of the shaft alley compartment.

The plaintiff brought suit in the circuit court of Madison County against ACBL and two of its subsidiaries, Jeff Boat, Inc., and Louisiana Dock Boat Co., Inc. (La. Dock), to recover for his injuries. This action was based, *inter alia*, on general principles of negligence and maritime law and on the Jones Act (46 U.S.C. sec. 688 *et seq.*). The case was submitted to the jury against ACBL and La. Dock under the Jones Act counts, and the jury awarded the plaintiff $250,000 in damages against both defendants. Judgment was entered upon that verdict. Defendants ACBL and La. Dock appeal from that judgment against them, and the plaintiff has brought a cross-appeal in which he requests that, if it is determined that he is not covered by the Jones Act as a matter of law, then the court's order dismissing his maritime and negligence counts should be reversed.

The defendants present three assignments of error: (1) The trial court should have directed verdicts in their favor because the evidence introduced at trial fails to show that the plaintiff was a "seaman." (2) The court erred in giving certain instructions proffered by the plaintiff, and (3) the court should have granted defendants' motion for a mistrial, based upon the conduct of plaintiff's counsel in examining a witness called by him under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 60), now section 2—1102 of the Code of Civil Procedure.

The first argument made by the defendants presents another variation on the Jones Act "riddle," as characterized by the Fifth Circuit (*Ardoin v. J. Ray McDermott & Co.* (5th Cir. 1981), 641 F.2d 277, *appeal after remand* (5th Cir. 1982), 684 F.2d 335; *Offshore Co. v. Robison* (5th Cir. 1959), 266 F.2d 769), namely, "When is a maritime worker a seaman?" More accurately, this case asks, "When is a jury question presented concerning whether a shipfitter injured while working on vessels on a floating drydock is a seaman?" The solution to this "riddle" requires more "clues," in the form of the facts of this case.

The facilities at which the plaintiff was employed were located on the Mississippi River at the foot of Plum Street in Alton, Illinois. They consisted of office, machine and mechanical barges, as well as

two floating drydocks. The barges were permanently secured to pylons by cables, and one would obtain access to the barges through a walkway from shore. The record indicates that none of the facilities at Alton were located ashore.

Although both floating drydocks could be moved from place to place, neither had any motive power, and they would have to be transported by a motor vessel. The drydocks were attached to large steel arms by cables. A vessel needing repair would move close to a drydock, or, if it were not self-propelled, it would be brought to the drydock, generally by the ACBL motor vessel Little Giant. The drydock would then be partially submerged, allowing the vessel to enter, and raised again, the vessel along with it.

The plaintiff was first hired by ACBL as a laborer and deckhand on the Little Giant. In that capacity, he was required to use lines and wires to attach the Little Giant to other vessels. Eventually, the plaintiff was promoted to second class fitter, and then again to first class fitter. As a fitter, he worked with torches and sledge hammers to fit steel into place on vessels in need of repair. However, he also continued to handle lines and wires, even when he worked on the drydock, because the vessels brought to the drydock had to be secured. The plaintiff recalled that he usually operated lines and wires about twice a day. Gary Bidwell, who was with the plaintiff on the R.W. Naye on December 10, 1973, and who had been employed by ACBL, always as a first class welder, testified that when he was assigned to work on a drydock, he would work with lines as the drydock was raised or lowered.

The plaintiff did not sleep on board any vessel or other facility. He lived ashore, reported for work as scheduled and received assignments to repair whatever motor vessels or barge vessels were in need of repair. These assignments could require him to work on a vessel in the drydock or on a vessel afloat in the Mississippi. He could perform repairs on a vessel belonging to ACBL or one of its subsidiaries, or on a vessel belonging to a concern unconnected with ACBL. The La. Dock and Jeff Boat Companies "provide the bulk of service" for ACBL and its barge companies, according to ACBL's vice-president and general counsel, but their facilities are operated independently and thus do repair and fabrication work on non-ACBL vessels. The R.W. Naye and the barge vessel S—127, on both of which the plaintiff was injured, were owned and operated by ACBL or subsidiaries. At the time of his injuries, the plaintiff was employed by La. Dock, being the ACBL subsidiary concerned with ship repair, and his paychecks reflected that ACBL acted as the paying agent for La. Dock.

■■ Recovery under the 1920 amendment to the Merchant Marine Act, commonly known as the Jones Act, is limited to "any seaman" suffering personal injury in the course of his employment or to the personal representative of any seaman who dies as a result of such injury. (46 U.S.C. sec. 688.) The provisions of the Act itself do not define the term "seaman," although there are many decisions which purport to do so. Because the question of whether an individual is a seaman for purposes of the Jones Act depends upon the facts of the particular case and the activity in which he was engaged at the time of the injury (*Desper v. Starved Rock Ferry Co.* (1952), 342 U.S. 187, 96 L. Ed. 205, 72 S. Ct. 216), it is only when the underlying facts are undisputed and the record reveals no evidence from which reasonable persons might draw conflicting inferences, that this question should be decided as a matter of law. *Ardoin v. J. Ray McDermott & Co.; Burns v. Anchor-Wate Co.* (5th Cir. 1972), 469 F.2d 730.

■■ In deciding whether a plaintiff's status as a seaman presented a jury question, the authorities under the Jones Act have been virtually unanimous in applying the following three-part test to various sets of facts: (1) that the plaintiff was injured upon a vessel in navigation, (2) that the plaintiff was aboard that vessel primarily to aid in navigation, and (3) that the plaintiff had a more or less permanent connection with that vessel or with a specific group or fleet of vessels. (*Abshire v. Seacoast Products, Inc.* (5th Cir. 1982), 668 F.2d 832; *Baker v. Pacific Far East Lines, Inc.* (N.D. Cal. 1978), 451 F. Supp. 84; *Griffith v. Wheeling Pittsburgh Steel Corp.* (3d Cir. 1975), 521 F.2d 31, *cert. denied* (1976), 423 U.S. 1054, 46 L. Ed. 2d 643, 96 S. Ct. 785; *Offshore Co. v. Robison.*) This test rests upon several unexplained definitions such as the terms "navigation" and "aid to navigation." But, in this case, it is the term "vessel" which the defendants claim presents a threshold issue, resolution of which in their favor as a matter of law would obviate applying the three-part test.

The plaintiff contends that the defendants presented their case in the trial court under the theory that the R.W. Naye, the barge S—127 and the floating drydock could be considered "vessels" by the jury and thus they should be prevented from denying their status as vessels to this court. However, in moving for a directed verdict, the defendants raised the issue of whether the plaintiff was not a seaman as a matter of law, and the defendants are correct that the status of the drydock as a vessel is an integral part of that question. Moreover, the defendants' written post-trial motion specifically argued that there was no evidence to prove the existence of any vessel in navigation. Thus, the theory that the floating drydock is not a vessel as a

matter of law is not a contention which was never presented to the trial court.

■ Essentially, the defendants insist that the floating drydock upon which the plaintiff worked was not a vessel as a matter of law, and therefore, the plaintiff could not be a seaman. The defendants accurately note that the Federal courts have developed the rule that a floating drydock is not a vessel as a matter of law when it is moored and in use as a drydock. (*Nevel v. Todd Shipyards Corp.* (N.D. Cal.), 1978 Am. Maritime Cases 2230; *Keller v. Dravo Corp.* (5th Cir. 1971), 441 F.2d 1239, *cert. denied* (1972), 404 U.S. 1017, 30 L. Ed. 2d 665, 92 S. Ct. 679; *Chahoc v. Hunt Shipyard* (5th Cir. 1970), 431 F.2d 576, *cert. denied* (1971), 401 U.S. 982, 28 L. Ed. 2d 333, 91 S. Ct. 1198; *Atkins v. Greenville Shipbuilding Corp.* (5th Cir. 1969), 411 F.2d 279, *cert. denied* (1969), 396 U.S. 846, 24 L. Ed. 2d 96, 90 S. Ct. 105; compare *United States v. Moran Towing & Transportation Co.* (4th Cir. 1967), 374 F.2d 656, *vacated on other grounds sub nom. United States v. Bethlehem Steel Co.* (1968), 389 U.S. 575, 19 L. Ed. 2d 775, 88 S. Ct. 689 (floating drydock under tow in navigable waters held to be a vessel); *Bernardo v. Bethlehem Steel Co.* (2d Cir. 1963), 314 F.2d 604 (judgment entered on jury verdict in favor of defendant and affirmed on appeal, thus status of floating drydock as not a vessel as a matter of law, not presented); contra, *Rogosich v. Union Dry Dock & Repair Co.* (3d Cir. 1933), 67 F.2d 377.) But this proposition is fatal to the plaintiff's claim only if the plaintiff does not contend to have been attached to any other vessel or fleet of vessels. For example, in *Nevel, Chahoc* and *Atkins*, it does not appear that the drydock workers maintained that they were members of the crew of the vessels they were repairing or of a fleet containing those vessels. In *Keller*, the court held that the disabled vessel upon which the plaintiff worked had been removed from navigation, and thus could not support a claim of unseaworthiness. Similarly, in *Cook v. Belden Concrete Products, Inc.* (5th Cir. 1973), 472 F.2d 999, *cert. denied* (1973), 414 U.S. 868, 38 L. Ed. 2d 116, 94 S. Ct. 175, the stationary construction platform on which the plaintiff was injured was held to be indistinguishable from a floating drydock, and there was no other vessel to which the plaintiff could be attached as a seaman, because the plaintiff was working on an uncompleted barge when he was injured. (See also *Buna v. Pacific Far East Line, Inc.* (N.D. Cal. 1977), 441 F. Supp. 1360 (paint float upon which plaintiff worked not a vessel, plaintiff had no more or less permanent connection with vessel being painted).) Other cases in which the plaintiff worked on a permanently attached floating platform, but did not work on a vessel temporarily on that

platform, are of no assistance to the defendants. *Watkins v. Pentzien, Inc.* (5th Cir. 1981), 660 F.2d 604, *cert. denied* (1982), 456 U.S. 944, 72 L. Ed. 2d 467, 102 S. Ct. 2010; *Leonard v. Exxon Corp.* (5th Cir. 1978), 581 F.2d 522, *cert. denied* (1979), 441 U.S. 923, 60 L. Ed. 2d 397, 99 S. Ct. 2032; *Blanchard v. Engine & Gas Compressor Services, Inc.* (5th Cir. 1978), 575 F.2d 1140; *Powers v. Bethlehem Steel Corp.* (1st Cir. 1973), 477 F.2d 643, *cert. denied* (1973), 414 U.S. 856, 38 L. Ed. 2d 106, 94 S. Ct. 160.

■ More analogous to the facts at bar is *Mietla v. Warner Co.* (E.D. Pa. 1975), 387 F. Supp. 937. In that case, the plaintiff was employed as a barge attendant, whose duties included keeping loaded barges free of water, checking the towing gear and looking for safety violations. He was assigned to maintain the barges which tied up to Pier 55 or to a permanent floating dock known as barge No. 4, both of which facilities the plaintiff conceded were not vessels. Nonetheless, the district court held that the plaintiff's status as a seaman was for the jury to decide, because the plaintiff could be considered to be a member of the crew of the barges which he tended. *Mietla* stands for the principle that a plaintiff who frequently works on a structure which is not a vessel is not precluded from being a seaman, if, in his employment he is assigned to vessels in navigation. In the present case, this means that, if the plaintiff met the three requirements of being a crew member of the R.W. Naye or the S—127 or a fleet which contained them, the fact that he repaired them while on a moored floating drydock does not deny him recovery under the Jones Act. These three requirements must now be examined in greater detail.

(1) *Were the R.W. Naye and the barge S—127 "vessels in navigation?"* It is not contested that the motor vessel and the barge are, in fact, vessels. Nor does their presence in the drydock for repairs mean that they were not in navigation at the time of the plaintiff's injuries. (*Bodden v. Coordinated Caribbean Transport, Inc.* (5th Cir. 1966), 369 F.2d 273; *Keymon v. Tennessee Towing Co.* (6th Cir. 1961), 296 F.2d 785.) The defendants do not represent the Naye and the S—127 as having been removed from service for a season or other substantial period of time (compare *Garcia v. Universal Seafoods, Ltd.* (W.D. Wash. 1978), 459 F. Supp. 463; *Desper v. Starved Rock Ferry Co.; Hawn v. American S. S. Co.* (2d Cir. 1939), 107 F.2d 999, with *Sweeney v. American Steamship Co.* (6th Cir. 1974), 491 F.2d 1085) or as undergoing repairs of such a major character as to amount to a withdrawal from navigation (*Wixom v. Boland Marine & Manufacturing Co.* (5th Cir. 1980), 614 F.2d 956; see also *Delome v. Union Barge Line Co.* (5th Cir. 1971), 444 F.2d 225, *cert. denied* (1971), 404 U.S.

995, 30 L. Ed. 2d 547, 92 S. Ct. 534). Therefore, the jury could properly determine that these vessels were in navigation when the plaintiff was injured.

(2) *Was the plaintiff acting "primarily in aid of navigation" of those vessels at the time of his injuries?* In keeping with the remedial purposes of the Jones Act, the phrase "primarily in aid of navigation" has been construed far beyond its natural meaning to include such personnel as hairdressers (*Mahramas v. American Export Isbrandtsen Lines, Inc.* (2d Cir. 1973), 475 F.2d 165) and waitresses (*Buford v. Cleveland & Buffalo Steamship Co.* (7th Cir. 1951), 192 F.2d 196), "as well as other persons not subject to being tattooed like ordinary seamen." (*Perez v. Marine Transport Lines, Inc.* (E.D. La. 1958), 160 F. Supp. 853, 855.) All that is necessary is that the duties of the plaintiff must have contributed to the vessel's function or to the accomplishment of its mission. *Baker v. Pacific Far East Lines, Inc.; Wilkes v. Mississippi River Sand & Gravel Co.* (6th Cir. 1953), 202 F.2d 383, *cert. denied* (1953), 346 U.S. 817, 98 L. Ed. 344, 74 S. Ct. 29.

The defendants are correct that, in determining whether the plaintiff acted primarily in aid of navigation as a fitter, his assigned tasks as a deckhand on the Little Giant are not relevant. (*White v. Louisiana Menhaden Co.* (E.D. La. 1980), 498 F. Supp. 126.) It is also well accepted that, although the throwing and securing of lines is normally a seaman's chore, a plaintiff who occasionally engages in that task is not necessarily a seaman. (*South Chicago Coal & Dock Co. v. Bassett* (1940), 309 U.S. 251, 84 L. Ed. 732, 60 S. Ct. 544; *Salgado v. M.J. Rudolph Corp.* (2d Cir. 1975), 514 F.2d 750; *Griffith v. Wheeling Pittsburgh Steel Corp.*) The significant question in the second portion of the "seaman" test is therefore whether the plaintiff, when performing the duties of a fitter, contributed to the function of the vessels which were in drydock or to the accomplishment of their mission.

Other decisions have held that plaintiffs employed in various repair capacities were primarily aiding in navigation. (*Porche v. Gulf Mississippi Marine Corp.* (E.D. La. 1975), 390 F. Supp. 624 (plaintiff welded pipe to be laid from barge); *Braniff v. Jackson Ave.-Gretna Ferry, Inc.* (5th Cir. 1960), 280 F.2d 523 (plaintiff employed as master mechanic on ferries); *Lukos v. Chesapeake & Ohio Ry. Co.* (W.D. Mich. 1954), 120 F. Supp. 296 (plaintiff assigned general cleaning and painting duties); *Rogosich v. Union Dry Dock & Repair Co.* (plaintiff was carpenter on floating drydock); contra, *Specht v. Pittsburgh Coal Co.* (W.D. Pa. 1975), 432 F. Supp. 717; *Chapman v. M/G Transport Services, Inc.* (W.D. Pa. 1977), 432 F. Supp. 723.) The results reached in these cases comport with the broad reading which the courts have

given to the phrase "in aid of navigation." In a strictly logical sense, the work performed by a shipfitter or similar repair worker is preparatory to, and is the first step towards rendering a vessel ready again for navigation or preventing it from being removed from navigation. It would be incongruous to hold that such a worker, who has a direct connection with making or keeping a vessel navigational, is not "primarily in aid of navigation" as a matter of law, while allowing the jury to determine that other seaside workers, whose connection with navigation is indirect at best, are seamen. The proper rule, derived from the authorities listed above, is that whether a plaintiff acted "primarily in aid of navigation" at the time of his injury is a jury question if the plaintiff was a repair or maintenance worker who was directly connected with keeping a vessel in navigation or preparing it to retain navigational capacity. As the plaintiff in this case met this criterion, resolution of the second part of the "seamen" test was properly left to the jury.

(3) *Did the plaintiff have a "more or less permanent connection" with the R.W. Naye and the barge S—127 or with a specific group or fleet of vessels which contained them?* This issue is the heart of the defendants' challenge to the court's failure to direct a verdict in their favor. The plaintiff does not argue that he had any sort of permanent attachment to either the Naye or the S—127, individually, nor does this record present facts to support such a claim. Consequently, the issue posed by this branch of the "seaman" test is if a jury question is presented concerning whether the plaintiff was "more or less permanently connected" with a fleet containing the Naye and the S—127. The defendants contend that no such connection was established, as a matter of law, and point to several decisions which they claim are analogous to the facts at bar.

In *Baker v. Pacific Far East Lines, Inc.*, the plaintiff served as a replacement member of a shoregang, which was assigned to cleaning, maintenance, painting and other duties on the defendant's vessels. Although approximately 90% of the plaintiff's employment time was spent upon barges and other vessels, he "rarely spent more than several consecutive hours aboard any given vessel" (451 F. Supp. 84, 88), and could not identify which ships he cleaned or maintained on any given day, or even the ships upon which he was injured. The district court held that the plaintiff's connection with any group of vessels was insufficiently permanent to justify a finding that he was a seaman, at least in part because the defendant's fleet consisted of between 500 and 1,000 barges. See also *Buna v. Pacific Far East Line, Inc.*, in which the plaintiff, also employed by the same defendant as a

shoregang worker, attested that his shoreside tasks included, *inter alia*, moving furniture in the defendant's office building, painting stripes in the defendant's parking lots and performing maintenance in the defendant's storerooms and office.

The plaintiffs or plaintiffs' decedents in *Bertrand v. International Mooring & Marine, Inc.* (W.D. La. 1981), 517 F. Supp. 342, worked as members of an anchor-handling and mooring crew, thereby performing classical mariner's work. They were injured in an auto accident in the course of their employment. As members of the anchor-handling and mooring crew, they spent between 90 and 100% of their work hours aboard vessels, readying them for their employer to use them to work on offshore drilling vessels. These men lived aboard the vessels for the duration of their assignments, but those assignments would range from several hours to about seven days, the average assignment lasting between four and five days. The court found that none of these workers had any sort of permanent connection with a specific group of vessels, and directed verdicts in their employer's favor. Yet, it was also noted in the opinion that the employer did not own any vessels, and even if an independent division of the defendant-employer did own five vessels, the evidence revealed that one of the men had worked on one of these vessels twice, while another had worked on one of them only once.

*Baker* and *Bertrand* are examples of two categories of decisions which are of little relevance to the facts at bar. The first of these consists of those cases in which the plaintiff was truly a "casual worker upon the water" (*South Chicago Coal & Dock Co. v. Bassett* (1940), 309 U.S. 251, 260, 84 L. Ed. 732, 738, 60 S. Ct. 544, 549), by virtue of the amount of time the plaintiff spent on land in the course of his employment, or the nature of his duties while ashore. (*Baker; Buna; White v. Louisiana Menhaden Co.* (plaintiff, normally employed on fishing vessel, was assigned to perform maintenance work at defendant's harbor facilities during four-month off season); *Fazio v. Lykes Brothers Steamship Co.* (5th Cir. 1978), 567 F.2d 301 (plaintiff, as member of shoregang, could work on no vessel at all on any particular day); *Rotolo v. Halliburton Co.* (5th Cir. 1963), 317 F.2d 9, *cert. denied* (1963), 375 U.S. 852, 11 L. Ed. 2d 79, 84 S. Ct. 111 (plaintiff and similar employees spent 80-90% of work time as welders at base shop on land); *Thibodeaux v. J. Ray McDermott & Co.* (5th Cir. 1960), 276 F.2d 42 (plaintiff, as welder in defendant's fabricating division, customarily worked on vessels under construction, conversion or outfitting).) The second category of cases includes those in which the plaintiff had only a temporary connection with the vessel upon which

he was injured, and in addition, could not identify a specific group of vessels to which he could claim permanent attachment. (*Bertrand; Guidry v. Continental Oil Co.* (5th Cir. 1981), 640 F.2d 523, *cert. denied* (1981), 454 U.S. 818, 70 L. Ed. 2d 87, 102 S. Ct. 96; *Richardson v. Norfolk Shipbuilding & Drydock Corp.* (E.D. Va. 1979), 479 F. Supp. 259, *aff'd* (4th Cir. 1980), 621 F.2d 633; *Lotzman v. Oxyness Shipping Co.* (1978), 93 Misc. 2d 461, 402 N.Y.S.2d 964; *Ross v. Mobil Oil Corp.* (5th Cir. 1973), 474 F.2d 989, *cert. denied* (1973), 414 U.S. 1012, 38 L. Ed. 2d 250, 94 S. Ct. 378; *Thomas v. Peterson Marine Service, Inc.* (5th Cir. 1969), 411 F.2d 592, *cert. denied* (1970), 396 U.S. 1006, 24 L. Ed. 2d 499, 90 S. Ct. 562.) Some cases are, of course, distinguishable from this one because they contain elements of both of these categories.

The defendants do not specifically contest the distinctions between the second group of decisions and the present case. However, they question whether the plaintiff can be considered as not "land-based." Instead of defining a shore-based worker as one who spends a significant portion of his work time on land or who undertakes tasks traditionally performed on land while ashore, the defendants urge that a shore-based worker is one "who is not exposed to the hazards of the sea." They note that in other cases in which maintenance workers were properly found to be more or less permanently connected with a fleet of vessels, those vessels were operational when the plaintiff worked on them, thereby exposing the workers to the hazards of the sea. (*Bazile v. Bisso Marine Co.* (5th Cir. 1979), 606 F.2d 101, *cert. denied* (1980), 449 U.S. 829, 66 L. Ed. 2d 33, 101 S. Ct. 94; *Mietla v. Warner Co.; Braniff v. Jackson Ave.-Gretna Ferry, Inc.*) From this observation, the defendants conclude that the plaintiff, who worked on vessels which were in and out of operation, and who spent much of his time working on a floating drydock, is a shore-based worker as a matter of law.

But, accepting defendants' suggestion that a maintenance worker must be assigned to work on operational vessels in order to satisfy the "permanency" requirement of the "seamen" test would be to read into that requirement a condition the case law does not explicitly mandate. It would also lead to the application of conflicting maxims under two different portions of the "seamen" test, inasmuch as a vessel in drydock for repairs is a vessel in navigation, even though, under the defendants' theory, a plaintiff who worked on a fleet containing that vessel could not be permanently attached to that fleet. Moreover, the amount of time a worker spends on land and the nature of his duties while ashore are more accurate indices of whether a

worker is "land-based" than is the operational capacity of the ship he is on when he is injured. Under these criteria, it cannot be said that the plaintiff was "land-based" as a matter of law. Furthermore, the plaintiff did not do all of his work while on the drydock. He also repaired vessels afloat in the Mississippi, and was thus "exposed to the hazards of the sea," even if he was not when he was injured.

Other cases mentioned by the defendants to justify entry of directed verdicts in their favor are factually different from the present case, even if they do not fall easily into either of the categories of cases mentioned above. In *Specht v. Pittsburgh Coal Co.*, the plaintiff was injured while performing repair work from scaffolding alongside the M/V D.J. Johnson. The plaintiff did not claim to be permanently connected with the Johnson, which was not owned by his employer, but he did assert the existence of such a connection with the towboat M/V Elizabeth. However, in a deposition taken two years after the accident, the plaintiff admitted that he had not been aboard the M/V Elizabeth for the past three or four years. He also stated that his employment included work in a shop on shore as well as assignments on board vessels. In *Chapman v. M/G Transport Services, Inc.*, decided by the same court which decided *Specht*, the plaintiff was employed by the defendant as a welder for only two weeks, and had he worked any longer, he would have had to join the United Steelworkers of America. While upon one of the defendant's barges at the end of that period, he was injured. The court found his connections with that vessel, as in *Specht*, to be temporary as a matter of law.

■ A review of the facts in this case shows that the plaintiff, contrary to many of the claimants in the decisions analyzed above, spent all of his work time on board vessels, or on the floating drydock, and none of his time ashore. It is not contended that his duties entailed anything other than the repair of vessels or the securing of lines on the vessels to be repaired or on the floating drydock. While the plaintiff serviced vessels in addition to those owned by ACBL or its subsidiaries, the record does not indicate the frequency of such repairs, except for the statement of ACBL's vice-president and general counsel that La. Dock and Jeff Boat provided the bulk of service for ACBL and its barge companies. Moreover, the number of vessels in the fleet to which the plaintiff insists he was attached, which also "might have some bearing on a jury determination that he was or was not a seaman" (*Mietla v. Warner Co.* (E.D. Pa. 1975), 387 F. Supp. 937, 939; see also *Baker v. Pacific Far East Lines, Inc.*), is not apparent of record. Given this information, the permanency of the plaintiff's connection to an ACBL fleet is indeed a close issue, yet it

cannot be said that there is no evidence from which reasonable jurors might draw conflicting inferences concerning that question. Even marginal claims under the Jones Act are properly left to the jury (*Smith v. Massman Construction Co.* (5th Cir. 1979), 607 F.2d 87, 89), and therefore, the nature of the plaintiff's connection with an ACBL fleet was correctly entrusted to their determination in this case. Because an analysis of the three elements of being a Jones Act seaman shows that the plaintiff did not fail to satisfy any of these elements as a matter of law, the defendants were not entitled to directed verdicts in their favor.

The defendants' second assignment of error consists of a group of seven arguments pertaining to certain of the plaintiff's instructions which were given to the jury. These arguments will be addressed in the order presented in the defendants' brief.

■ (1) The defendants challenge the accuracy of plaintiff's instruction No. 19, which defines the term "vessel" as follows:

"The primary meaning of the term 'vessel' is that of any watercraft or other contrivance used, or capable of being used, as a means of transportation on water.

The term 'vessel' also includes, however, various special purpose craft (such as barges) which do not operate as vehicles for transportation but rather serve as movable, floating bases for stationary operations. If a structure is buoyant and capable of being floated from one location to another it may be found to be a vessel even though it may have remained in one place for a long time and even though there are no plans to move it in the foreseeable future."

The defendants insist that this is an improper definition of a vessel because it does not require the jury to consider "the purpose for which the craft was constructed and the business in which it is engaged." (*Cook v. Belden Concrete Products, Inc.* (5th Cir. 1973), 472 F.2d 999, 1001, *cert. denied* (1973), 414 U.S. 868, 38 L. Ed. 2d 116, 94 S. Ct. 175.) They also view this instruction as allowing the jury to consider as a vessel anything that floats.

The plaintiff argues that these objections were not preserved for purposes of this appeal. He characterizes defendants' objection to this instruction as only general in nature and therefore insufficient to save for review the defects listed above. (*Casbarra v. St. James Hospital* (1979), 85 Ill. App. 3d 32, 406 N.E.2d 544; *Mathis v. Burlington Northern, Inc.* (1978), 67 Ill. App. 3d 1009, 385 N.E.2d 780; 87 Ill. 2d R. 239(b).) At the instruction conference, defendants' counsel stated that he objected to plaintiff's instruction No. 19 because it did not

properly state the law, and because the evidence did not show that the barge, drydock or the R.W. Naye fit plaintiff's definition. He also disagreed with the clause "which do not operate as vehicles for transportation but rather serve as movable, floating bases for stationary operations."

Whether these objections are specific enough to preserve the defendants' challenges to plaintiff's instruction No. 19, those challenges must be deemed waived for another reason. To save an objection to an instruction, it is incumbent upon a party to tender a proper instruction, otherwise that objection is waived. (*Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 385 N.E.2d 664; *Department of Public Works & Buildings v. Klehm* (1973), 56 Ill. 2d 121, 306 N.E.2d 1, *cert. denied* (1974), 417 U.S. 947, 41 L. Ed. 2d 667, 94 S. Ct. 3072; 87 Ill. 2d R. 366(b)(2)(i).) The record does not indicate that the defendants offered their own definition of a vessel, nor does their brief contain such a definitional instruction. Because a trial court has, in general, no duty to give instructions which were not requested by the parties (*Chicago Land Clearance Com. v. Darrow* (1957), 12 Ill. 2d 365, 146 N.E.2d 1; *City of Chicago v. Baird* (1971), 132 Ill. App. 2d 644, 270 N.E.2d 259, *aff'd* (1972), 52 Ill. 2d 512, 288 N.E.2d 110), defendants' objections to plaintiff's instruction No. 19 have been waived.

■ (2) The defendants next maintain that plaintiff's instruction No. 21 inaccurately defined the term "member of a crew," which phrase is synonymous with the Jones Act requirement of being a seaman. That instruction read as follows:

"The proposition of whether the plaintiff was a member of a crew of a vessel at the time of the accident is a question of fact which you must determine, just as you determine all questions of fact in the case.

You may find that the plaintiff was a member of a crew of a vessel if you find: (a) that the plaintiff's employment related to a vessel having a specific function (or mission); and, (b) that the plaintiff had a part in the operations of the vessel, whether it be related to the vessel's transportation or to the performance of its function (or mission).

It is not essential that the plaintiff be assigned to any particular vessel. He may have duties which require him to serve on numerous vessels, and you may still find that he is a member of the crew of the particular vessel involved in this case.

One whose employment takes him on to a vessel may be found to be a member of the crew, even though his stay aboard

is expected to last only for a very short period.

You may find that the defendant [*sic*] is a member of the crew of a vessel even though the vessel has not moved on the water at any time during the plaintiff's employment, and even though there are no plans to move it at any time in the foreseeable future.

There must, however, be more than an irregular connection between the plaintiff and some vessel in order that he may be found to be a member of the crew. If the plaintiff were a mere passenger being transported to a place of work which is not connected with a vessel he is not a member of the crew of the vessel in which he is being transported, even though his employer owned that vessel and was transporting the plaintiff for its own purposes."

At the instruction conference, defendants' counsel objected to the instruction as being an inaccurate statement of the law. He offered instead an instruction, defendants' No. 12, which stated that "[a] person is a crewman if: (1) he is more or less permanently attached to a vessel or fleet of vessels; (2) the vessels are in navigation; and (3) his primary and natural duty is to serve as an aid to navigation." Thus, contrary to the plaintiff's assertions, the defendants have preserved their objections to plaintiff's instruction No. 21.

A short explanation concerning the source of this instruction is necessary. Unlike the courts in this State, the Federal courts do not have a set of standardized instructions comparable to the Illinois Pattern Jury Instructions. Nor, due to the relative infrequency of Jones Act cases in the courts of this State, do the Illinois Pattern Jury Instructions contain jury instructions on issues peculiar to the Jones Act. As a result, attorneys who try Jones Act cases must rely upon unofficial compilations of jury instructions, extracted by scholars from relevant cases. One of the most widely used of these sets is E. Devitt & C. Blackmar, Federal Jury Practice & Instructions (2d ed. 1970) (FJPI). Plaintiff's instruction No. 21 is a verbatim transcription of the definition of "member of a crew" found in section 96.03 of FJPI, even to the erroneous reference to "defendant" instead of "plaintiff" in the fourth paragraph.

The defendants claim that plaintiff's instruction No. 21 does not require the jury to find that (1) the vessel upon which the plaintiff was employed was in navigation, and (2) that he had a more or less permanent connection with the vessel. They also argue that the last paragraph only requires the jury to find that the plaintiff was associated with some vessel for some time, instead of having a permanent

connection with a vessel, unless they found him to be a passenger.

It has been stated that reliance on general compilations of jury instructions, such as FJPI, is not without dangers, because no authors can have a comprehensive knowledge of all fields of law upon which juries may be instructed. (*Peymann v. Perini Corp.* (1st Cir. 1974), 507 F.2d 1318, 1324 n.2, *cert. denied* (1975), 421 U.S. 914, 43 L. Ed. 2d 780, 95 S. Ct. 1572.) Difficulties may also be presented in the use of quotations from published opinions which were never intended to be quoted directly as jury instructions. (*Bernardo v. Bethlehem Steel Co.* (2d Cir. 1963), 314 F.2d 604, 609.) However, the reported decisions show that plaintiff's instruction No. 21 does in fact contain an accurate statement of the law, and that it is defendants' instruction No. 12 which is misleading.

As noted above, the phrases "in navigation" and "primarily in aid of navigation" have been construed beyond their natural or literal meanings. Thus, defendants' tendered instruction No. 12, which submits those words to the jury without defining them, would be unduly restrictive. It has been said that, in instructing a jury under the Jones Act, a court must disabuse the jurors of the notion that a seaman is necessarily a "man with a tattoo, who walks with a rolling gait, wears bell-bottom trousers and handles, reefs and steers the vessel." (*Marine Drilling Co. v. Autin* (5th Cir. 1966), 363 F.2d 579, 580.) Defendants' instruction No. 12 fails to accomplish this task. *Offshore Co. v. Robison.*

Instead, the phrase "primarily in aid of navigation" has been defined as requiring that the duties of the plaintiff must have contributed to the vessel's function or to the accomplishment of its mission. (*Baker v. Pacific Far East Lines, Inc.; Wilkes v. Mississippi River Sand & Gravel Co.*) Jury instructions which have been worded in accordance with that definition have been consistently approved by reviewing courts. (*Willis v. Titan Contractors Corp.* (Tex. Civ. App. 1981), 625 S.W.2d 69, *writ of error refused; Marine Drilling Co. v. Autin; Williamson v. Daspit Brothers Marine Divers, Inc.* (5th Cir. 1964), 337 F.2d 337; *Tipton v. Socony Mobil Oil Co.* (5th Cir. 1963), 315 F.2d 660, *rev'd on other grounds* (1963), 375 U.S. 34, 11 L. Ed. 2d 4, 84 S. Ct. 1.) Also, the Committee on Pattern Jury Instructions of the Fifth Circuit's District Judges Association has incorporated this language into its recommended Jones Act instruction. (Committee on Pattern Jury Instructions, Dist. Judges Assoc., Fifth Cir., Pattern Jury Instructions (Civil Cases), Federal Claims Instruction 7A—Jones Act—Unseaworthiness (1980) (hereinafter Fifth Cir. Instruction 7A).) The defendants' objections to the second paragraph of plaintiff's in-

struction No. 21 are not well taken, for that paragraph adequately explains the requirement that the plaintiff have been aboard a vessel primarily to aid in navigation.

Nor is this instruction's definition of the "permanent attachment" requirement reversible error. While it would have been preferable for the court to require the jury to find that the plaintiff was more or less permanently attached to a vessel or group of vessels or that he performed a substantial part of his work aboard that vessel or group of vessels, in those words (*Willis v. Titan Contractors Corp.; Marine Drilling Co. v. Autin; Williamson v. Daspit Brothers Marine Divers, Inc.; Tipton v. Socony Mobil Oil Co.;* Fifth Cir. Instruction 7A; see also *Arundel Corp. v. Jasper* (1959), 219 Md. 519, 150 A.2d 415), the phrase "more than an irregular connection with some vessel" is not improper language in a Jones Act instruction. (*Stafford v. Perini Corp.* (1st Cir. 1973), 475 F.2d 507, 510, 511.) Additionally, the reference to a passenger being transported to a place of work does not dilute the requirement of the plaintiff's connection with a vessel, and appears to be mere surplusage under the facts of this case.

■ (3) The defendants further argue that plaintiff's instructions Nos. 13 and 20B erroneously referred to the defendants as vessel owners or operators rather than employers, and contend that it is only the employer-employee relationship to which Jones Act liability may attach. However, at the instruction conference, defendants' counsel did not object to plaintiff's instruction No. 13 on the ground that it did not use the word "employer." Moreover, defendants' instruction No. 6A, which was offered as an alternative to plaintiff's instruction No. 20B, also referred to the defendants as "vessel owners." Consequently, the defendants will not be heard to complain of this language in these instructions.

(4) It is also asserted that plaintiff's instruction No. 18A was defective in that it did not specify which vessel to which the plaintiff claimed permanent attachment. The record of the instruction conference does not reflect that this instruction was objected to because of that omission, and this argument has also been waived.

(5) The defendants claim that the first three paragraphs of plaintiff's instruction No. 17A duplicated plaintiff's instruction No. 16A in its entirety. This objection was not made at the instruction conference, and has therefore not been preserved for purposes of this appeal.

■ (6) The court gave plaintiff's instruction No. 12A, which is from section 80.16 of FJPI. It read as follows:

"Since a corporation can act only through its officers or em-

ployees, or other agents, the burden is on the plaintiff to establish, by a preponderance of the evidence in the case, that the negligence of one or more officers, or employees, or agents, of one or more of the defendants (other than the plaintiff) was a proximate cause of any injuries and consequent damages sustained by the plaintiff.

Any negligent act or omission of an officer, or employee, or other agent, of a corporation, in the performance of his or her duties, is held in law to be the negligence of the corporation."

The defendants objected to this instruction, as they do in this court, because there is an adequate instruction in Illinois Pattern Jury Instructions (IPI), Civil (2d ed. 1971). They offered as an alternative defendants' instruction No. 8, from IPI Civil No. 50.11, which stated, "The defendants are corporations and can act only through their officers and employees. Any act or omission of an officer or employee within the scope of his employment is the action or omission of the defendant corporation."

Supreme Court Rule 239(a) provides, in general, that whenever an Illinois Pattern Jury Instruction contains an instruction applicable to the case, and the court determines that the jury should be instructed on that issue, "the IPI instruction shall be used, unless the court determines that it does not accurately state the law." (87 Ill. 2d R. 239(a).) It is not suggested that IPI Civil No. 50.11 was on a subject upon which the jury should not have been instructed, that it was inaccurate, or that FJPI No. 80.16 was necessary to "amplify or clarify" IPI Civil No. 50.11. (*Lay v. Knapp* (1981), 93 Ill. App. 3d 855, 417 N.E.2d 1099.) Therefore, IPI Civil No. 50.11 should have been given. It should be noted that plaintiff's instruction No. 12, which was approved by the court before it was withdrawn by the plaintiff, was a modified form of IPI Civil No. 50.11.

However, a violation of Supreme Court Rule 239(a) is not automatically reversible error. (*Law v. Central Illinois Public Service Co.* (1980), 86 Ill. App. 3d 701, 408 N.E.2d 74; *Hitt v. Langel* (1968), 93 Ill. App. 2d 386, 236 N.E.2d 118.) The defendants do not contend that FJPI No. 80.16 is partial, misleading or argumentative. (*Siebert v. Grana* (1968), 102 Ill. App. 2d 283, 243 N.E.2d 538.) In fact, both FJPI No. 80.16 and IPI Civil No. 50.11 present the identical proposition of law that a corporation is responsible for the acts of its employees undertaken within the scope of their employment, even if that proposition is discussed in slightly different language. The only significant distinction between the two instructions is that FJPI No. 80.16 refers specifically to the negligence of the employees of a corporation,

while IPI Civil No. 50.11 refers in more general terms to "any act or omission" of those employees. It is difficult to envision any prejudice which could have accrued to the defendants from the erroneous giving of plaintiff's instruction No. 12A.

■■■ (7) The defendants' final instructional issue is somewhat difficult to understand. They argue that the court erred in giving "instructions nos. 9 and 10," but the instructions reproduced in their brief as objectionable are plaintiff's instruction No. 9 and defendants' instruction No. 10. Yet, even if it is assumed that it is plaintiff's instruction Nos. 9 and 10 with which defendants take issue, it is also unclear what instruction they supposedly tendered as an alternative. They contend that they "offered an adequate instruction on the matter, IPI 3.01," but IPI Civil No. 3.10 is on the impeachment of a witness by prior inconsistent statement or conduct, which was not an issue in this case, and the instruction reproduced in the brief as IPI Civil No. 3.01 is actually the first sentence of plaintiff's instruction No. 10, which is IPI Civil No. 15.01.

The defendants insist that the instructions Nos. 9 and 10 (presumably plaintiff's instructions Nos. 9 and 10, being IPI Civil Nos. 12.04 and 15.01) "were submitted to the jury though there was no evidence that implied that a third party, not as [sic] party to the suit, was to blame for the injury to the plaintiff." However, even though it has been held that this combination of instructions should not be given unless there is some evidence that something other than the negligence of the defendant proximately caused the plaintiff's injuries (Notes on use to IPI Civil Nos. 12.04 and 15.01; *Perry v. Chicago & North Western Transportation Co.* (1977), 54 Ill. App. 3d 82, 369 N.E.2d 155), this does not appear to have been the position taken by defendants' counsel in objecting to plaintiff's instruction No. 9 at trial. He averred that "there is evidence in the case that the vessels involved were not owned by American Commercial Barge Lines, that it [sic] was owned by others; that the condition of the vessel itself might have been the proximate cause of the alleged injury to the plaintiff, and that the jury could so find." This statement is an accurate assessment of some of the evidence presented at trial, especially the testimony of ACBL's vice-president and general counsel, who suggested that the vessels could be owned by ACBL's parent company, American Commercial Lines, Inc., which was not a party to the suit. Under the relatively ambiguous status of the ownership of the vessels involved, no error was committed in the giving of these instructions.

■■■ The defendants' last assignment of error is that the court should have declared a mistrial during plaintiff's examination of Mi-

chael Sheehan, ACBL's manager of training and safety. In their brief, defendants contend that plaintiff's counsel "exhibited hostile tone" toward that witness and defense counsel, "made other improper remarks" directed toward defense counsel, and also "engaged in improper questioning and improper courtroom behavior." They do not specify the remarks and questions characterized as improper, but merely list several pages of the record. Their post-trial motion was even less specific, contending only that "the court erred in allowing plaintiff's counsel to ask unreasonably argumentative questions and to engage in other prejudicial conduct by way of his own statements and comments during the testimony of Michael Sheehan." While it may be questionable whether defendants' allegations are specific enough to preserve this alleged error for purposes of this appeal, a review of the pages of the record on which defendants find objectionable material fails to reveal grounds for reversal.

For the reasons presented above, the judgment of the circuit court of Madison County is affirmed in its entirety.

Affirmed.

WHITE, J., concurring.[1]

JUSTICE KASSERMAN, dissenting:

It is my opinion that the trial court erred in giving plaintiff's instruction No. 21; therefore, I must respectfully dissent.

The majority in its opinion recognizes that it is essential to a proper determination of the question of whether plaintiff was entitled to maintain this action under the Jones Act that the jury be accurately instructed as to the proper definition of the words "seaman" and "member of the crew." It is my opinion that plaintiff's instruction No. 21 fails in this respect; therefore, the giving of such instruction constituted reversible error.

The authority cited as authorizing plaintiff's instruction No. 21 was E. Devitt & C. Blackmar, Federal Jury Practice & Instructions sec. 96.03 (2d ed. 1970); however, an examination of this publication indicates that it is a compilation of statements made in various cases in the Federal courts (*Slatton v. Martin K. Eby Construction Co.* (8th Cir. 1974), 506 F.2d 505; *Braniff v. Jackson Ave.-Gretna Ferry, Inc.* (5th Cir. 1960), 280 F.2d 523; *Stanley v. Guy Scroggins Construction*

---

[1]Justice White was assigned to the panel on rehearing in place of Justice Scholz who retired from the bench on December 6, 1982.

*Co.* (5th Cir. 1961), 297 F.2d 374; *Senko v. LaCrosse Dredging Corp.* (1957), 352 U.S. 370, 1 L. Ed. 2d 404, 77 S. Ct. 415; *Texas Co. v. Savoie* (5th Cir. 1957), 240 F.2d 674). It is noteworthy that none of the quoted statements were given in the process of instructing the jury but were statements of law recited in the courts' decisions. While the quoted portions of the various statements were proper statements of the law, they do not purport to be the basis for an instruction. Further, not all of the elements contained in plaintiff's instruction No. 21 are based on direct quotes from these cases.

The perils resulting from a court relying on compilations such as Federal Jury Practice & Instructions are best stated in *Peymann v. Perini Corp.* (1st Cir. 1974), 507 F.2d 1318, in which the court in a footnote stated:

> "We have frequently expressed our apprehensions with respect to general compilations of jury instructions. *See, e.g.,* McMillen v. United States, 1 Cir., 1967, 386 F.2d 29, at 32. They are dangerous because no authors, however erudite, can have a comprehensive substantive background in all fields. In sec. 93.05 of Devitt & Blackmar there is a suggested special interrogatory, supposedly, (but, on investigation not), supported by authority, that would be jettisoned by any admiralty lawyer." 507 F.2d 1318, 1324 n.2.

Defendant's instruction No. 12, which was refused by the court, stated:

> "A person is a crewman if: (1) he is more or less permanently attached to a vessel or fleet of vessels; (2) the vessels are in navigation; and (3) his primary and natural duty is to serve as an aid to navigation."

Defendant's authority for such instruction was *Richardson v. Norfolk Shipbuilding & Drydock Corp.* (E.D. Va. 1979), 479 F. Supp. 259, a United States District Court decision based on the decisions in *Whittington v. Sewer Construction Co.* (4th Cir. 1976), 541 F.2d 427, and *South Chicago Coal & Dock Co. v. Bassett* (1940), 309 U.S. 251, 84 L. Ed. 732, 60 S. Ct. 544.

In *Ardoin v. J. Ray McDermott & Co.* (5th Cir. 1981), 641 F.2d 277, the Circuit Court of Appeals for the Fifth Circuit addressed this issue and stated:

> "In *McKie v. Diamond Marine Co.,* 204 F.2d 132 (5th Cir. 1953), we set forth a definition of the phrase 'member of the crew' which, although restated and refined since, still articulates the basic compass of the term 'seaman' as used in the Jones Act. [The *McKie* court stated:]

'The essential and decisive elements of the definition of a "member of a crew" are that the ship be in navigation; that there be a more or less permanent connection with the ship; and that the worker be aboard primarily to aid in navigation.'

204 F.2d at 136. This definition has been our guide as we have attempted to resolve numerous riddles concerning the status of various types of ambiguous-amphibious workers involved in the offshore petroleum industry. *See Offshore Co. v. Robison,* 266 F.2d 769 (5th Cir. 1959) ('When is a roughneck a seaman?'). In this case the riddle is revived in the form of the question 'When is a structural welder a seaman?' " 641 F.2d 277, 280.

It is my conclusion that plaintiff's instruction No. 21 fails to set forth the requirement that the ship be in navigation and fails to fully set forth the essential elements of "seaman" as set forth in *Ardoin.* Further, it accentuates matters which are not relevant to the instant case. Therefore, I am of the opinion that plaintiff's instruction No. 21 should have been refused by the trial court and defendants' instruction No. 12 should have been given.

For the foregoing reasons, I would reverse the judgment of the trial court and remand for new trial.